# STATE v. MOSES L. BEAN.

## *Town and Cities—Taxation.*

1. A town has no right to impose any tax but such as is expressly authorized by its charter for purposes of revenue.

2. The power to pass ordinances for regulating the internal affairs of a town (market regulations and the like), is a police power and does not of itself confer the right to levy taxes.

3. The power to license persons for the privilege of carrying on trades and to require a price therefor, is a police power, but does not give the right to use the license as a mode of taxation for revenue, in

the absence of a clear intent in the charter. The license fee must be reasonable and not for the purpose of raising revenue. The power to "license" and to "tax," discussed and distinguished by ASHE, J.

(*Com'rs* v. *Means*, 7 Ired., 406; *Pullen* v. *Com'rs*, 68 N. C., 451, cited and approved.)

CRIMINAL ACTION, commenced before the mayor of Salisbury, for violation of town ordinance, and tried on appeal at Spring Term, 1884, of ROWAN Superior Court, before *Gilmer, J.*

By the act of incorporation of the town of Salisbury ratified on the 27th day of January, 1859, it was enacted in section 28 that the commissioners of said town shall have power to regulate the manner in which provisions may be sold in the streets and markets, and to fix penalties for the breach of their ordinances which shall be recovered in the name of the commissioners of the town of Salisbury before any court having competent jurisdiction; and afterwards, to-wit., on the 26th of August, 1881, the commissioners passed the ordinance for the violation of which this prosecution was commenced, a copy of which is hereinafter set forth in the special verdict of the jury, who at said term of the superior court found as follows:

"That the charter of the town of Salisbury authorizes the commissioners of the town of Salisbury to regulate the manner in which provisions may be sold in the streets and markets, and to fix penalties for the breach of this ordinance and that thereupon the commissioners for the town of Salisbury passed an ordinance as follows:

Be it ordained that no butcher or other person shall cut up and expose to sale any fresh meat within the corporate limits of the town of Salisbury, without first obtaining a license from the commissioners of the town, which license shall authorize the person or persons to sell meat, at a certain stand, shop or stall, specified in said license, to be used

as a market, and for which license said persons shall pay the sum of three dollars per month, payable in advance, and any person selling meat without a license, or at any place not licensed as a market, shall forfeit and pay for each offence the sum of ten dollars.

We further find that thereafter the said town passed the following ordinance:

Be it ordained that no beef or other fresh meat shall be hung up or publicly exposed on the side-walks, under a penalty of a fine of five dollars for each and every offence.

We further find as a fact that the defendant did thereafter carry on the business of a butcher and expose to sale fresh meat within the corporate limits of said town, and without paying the tax of three dollars per month, payable in advance, and that said meats so sold and exposed for sale were not the products of defendant's farm, and that the town collector of Salisbury demanded said taxes, and defendant refused to pay the same.

Upon the facts so found as aforesaid, we further say, that if in law the commissioners of the town of Salisbury had legal authority to pass the first ordinance aforesaid, then we find the defendant guilty ; but if the said commissioners had not legal authority to pass such ordinance, then we find the defendant not guilty."

Upon the finding of the jury the court adjudged that the defendant was not guilty, and the solicitor appealed.

*Attorney-General* and *J. M. McCorkle,* for the State.
*Mr. Theo. F. Kluttz,* for defendant.

ASHE, J. The question is, did His Honor err in pronouncing judgment upon the special verdict. And this involves the inquiry whether the commissioners of the town of Salisbury had the power under its charter and its amendments, to require that butchers, before selling fresh

meat in the town of Salisbury, should first obtain a license therefor and pay the sum of three dollars per month in advance for the privilege.

By the original act of incorporation, ratified the 27th day of January, 1859, the commissioners of the town were empowered to levy taxes upon the polls and real property, upon stoops, steps, porches or piazzas encroaching more than a certain distance upon the streets; upon hogs and dogs, peddlers, circusses, rope dancers, &c., and it was enacted (the 28th section of the act): "That said board of commissioners shall have power to regulate the manner in which provisions may be sold in the streets and markets of said town, and to regulate the manner in which the public markets and streets in said town may be used, and to affix penalties for the breach of these ordinances which shall be recovered in the name of the commissioners of the town of Salisbury before any court having competent jurisdiction.

But no power was given to the commissioners to impose a tax or fee upon any persons for the privilege of exercising a trade or calling within the town.

The act of 1859, ch. 223, an act to amend the charter of the town of Salisbury, enacted: "That the board of commissioners for the town of Salisbury shall have power annually to levy and cause to be collected in the manner prescribed in the charter the following *additional taxes*, and here was enumerated a long list of taxable subjects, but the power to tax butchers or to require them to take out and pay for a license before exercising their business, is nowhere given in this amendatory act."

The act was followed by the act of 1877, ch. 138, which was "an act to extend the corporate limits of the town of Salisbury, and to amend the charter of said town." It is provided in section 15 of this act: "That in addition to the *ad valorem* tax on property the board of commissioners shall have power to levy and collect the following *taxes for*

*the privilege of carrying on the business or doing the act named, to wit:*" Here follows a catalogue of some twenty objects of taxation, but butchers or the venders of meat are not mentioned.

The power here given the commissioners of Salisbury to levy a tax upon the subjects enumerated is clearly a power to tax for the *purpose of revenue,* and the fact that butchers are not included in the enumeration shows that the legislature did not intend to give the commissioners the power to tax them. The maxim "*expressio unius exclusio alterius,*" applies. Besides it is well settled that commissioners of a town have no right to impose any taxes but such as are expressly authorized by the act of incorporation. *Commissioners* v. *Means,* 7 Ired., 406 ; *Pullen* v. *Commissioners,* 68 N. C., 451.

The right to levy taxes for the privilege of carrying on any trade, calling or business as given by the act of 1877, is manifestly a power to tax for the purpose of revenue. It is called a tax in the act, and it is not competent for the commissioners, by calling it a license, to do indirectly what they are prohibited from doing directly.

The commissioners, however, seem to have founded their right to adopt the ordinance in question under the power of police regulation given by the 28th section of the original charter above cited, which vests in them the power to regulate the manner in which provisions may be sold in the streets and markets of the said town, and to regulate the manner in which the public markets and streets in said town may be used, and to affix penalties for the breach of the ordinance, &c.

The power here given is a mere police power, and there is a marked distinction between the power of taxation and the usual police powers which were all that were intended to be given by the section just recited. These powers are granted for the purpose of enabling city and town author-

ities to preserve the peace and good order of the community, to provide for the sanitary condition, to establish markets and regulate them, to have supervision over the streets, and pass all ordinances for the administration of their internal affairs which are consistent with their charters and not in contravention of the general laws of the state. And these ordinances may be enforced by penalties or fines, and by criminal actions in cases where the courts have jurisdiction. But the power to tax for the purpose of revenue is not one of the functions of police power. There are authorities to be found to the effect that, under the police power, license may be granted for the exercise of particular avocations and employments; but in all such cases, it is held that the fee or price exacted for the privilege must not be with the view to revenue, and in such cases it is competent and proper for the courts, where the effect and purpose of an ordinance are brought to be reviewed by them, to see that the fee or price paid for the privilege of exercising the franchise is reasonable, and not for the purpose of raising revenue. Desty on Taxation, 306, and to the like effect is *State* v. *The Mayor*, &c., 33 N. J., 280. And in Dillon on Municipal Corporations, § 357, (3rd edition) is to be found the following passage on this point : " Concerning useful trades and employments, a distinction is to be observed between the power to 'license' and the power to 'tax.' In such cases, the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit or use the license as a mode of taxation with the view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged."

In *Commonwealth* v. *Stodd*, 2 Cush, 562, it was held, that where authority was given to a city to adopt rules and orders for the regulation of omnibuses, stages, &c., it did not authorize the adoption of an ordinance requiring the payment of a tax or duty on each carriage-license, varying

from one to twenty dollars according to the different kinds of carriages. It was regarded as a direct tax upon the vehicle used, or its owner, and not necessary to secure the objects of the above grant of power to the city.

And in *Delcamber* v. *Clare*, 34 La. An., 1050, it was held that a charge of a specific amount for the daily privilege of keeping a private butcher's stand is a license or tax. The power of municipal corporations must be expressly conferred by law. Such corporation may, under its police power, regulate or suppress such private markets, but cannot under such power impose a tax for revenue.

In *Vansant* v. *Harlem Stage Co.*, 59 Md. 330, it is decided that the power given to the city of Baltimore by the act of 1880, ch. 69, " to license and regulate all carriages and other vehicles, does not confer a power to tax such vehicles for revenue purposes, and an ordinance requiring the payment of seventy-five dollars as an original license for an omnibus, and fifty dollars for an annual renewal thereof, is void as amounting to the exercise of the taxing power."

And in the case of *Commissioners* v. *Means*, *supra*, it is held, " a power to enact by-laws, &c., for the good government of the town, *of itself*, confers no right to levy taxes.

The consideration of the case then resolves itself in the inquiries, whether the three dollars per month, payable in advance, exacted for the privilege of the selling of butcher's meat in the town of Salisbury, was the exercise of police power conferred upon the corporation for the good government of the town, or was a tax levied with the view to revenue, and we are of the opinion the latter was the main object of the commissioners in adopting the ordinance, and it is therefore void.

The court below committed no error in the judgment pronounced upon the special verdict. Let this be certified to the superior court of Rowan county, that the defendant may have his discharge.

No error.                                        Affirmed.