URIAH VAUGHAN v. THE TOWN OF MURFREESBORO.

*Taxation—Property.*

1. The word "estate" has a broader meaning than the word "property." The latter word would not include choses in action, unless there be something in the context which would require it to receive this interpretation, except by force of the definition contained in *The Code*, §3765, par. 6.

2. So where a statute allowed a municipal corporation to levy a tax upon all persons and property within the town; *It was held,* that this did not authorize a tax on solvent credits, money, or bonds.

*(Pullen* v. *Com'rs,* 68 N. C., 451; *Pippen* v. *Ellison,* 12 Ired., 61; *Scales* v. *Scales,* 6 Jones Eq., 163; *Hastings* v. *Earp,* Phil. Eq., 5; *Hogan* v. *Hogan,* 63 N. C., 222; cited and approved).

This was a CONTROVERSY WITHOUT ACTION, submitted to *Shipp, Judge,* at Fall Term, 1886, of HERTFORD Superior Court.

In the amended charter of the town of Murfreesboro, passed by the General Assembly at its session in 1885, is contained the following provision : " That the board of commissioners shall have power annually to levy a tax upon all persons and property within the town subject to taxation for county purposes under the general laws of the State for the year in which said taxes are levied : *Provided,* the tax shall in no case exceed twenty-five cents on the one hundred dollars' valuation of property and seventy-five cents on the poll." Acts 1885, ch. 138, §9.

At a meeting of the commissioners in May, the same tax was levied as for the preceding year, and to the maximum limit allowed by the act. The plaintiff has paid the full amount of the assessment upon him, except that upon his solvent credits and securities, of which he made no return, but which by order of the board were inserted in the tax list as taken from the plaintiff's return of his taxable property for State and county purposes. The solvent credits and securities, valued at $35,000, consist of notes and bonds due from non-resident debtors, owning no property in the town, and of bonds issued by the city of Norfolk, in Virginia.

The sole question presented in the case agreed is, whether these latter are proper subjects of taxation by the authorities of the town, and the plaintiff liable for the per centum tax thereon, and this requires a construction of the clause in which the right to tax is conferred and limited. The

Court below ruled that the plaintiff was liable, and gave judgment for the Board, from which the plaintiff appeals.

*Mr. D. A. Barnes*, for the plaintiff.
*Mr. R. W. Winborne*, for the defendant.

SMITH, C. J., (after stating the facts).   A very similar controversy sprung up between the tax paying residents and corporate authorities of the city of Raleigh, and was determined in *Pullen* v. *Commissioners*, 68 N. C., 451.   The charter, as it then existed, authorized the commissioners, in order to raise a fund to meet the expenses of the government of the city, to annually levy and collect taxes: 1st. On real estate in the city in a limited amount; 2d. On taxable polls, limited also in amount, and upon six other enumerated subjects of taxation, in none of which was personal property mentioned.

But the Constitution, Art. 7, §9, commands, that "all taxes levied in any county, city, town or township, shall be uniform and *ad valorem* upon all property in the same, except property exempt by this Constitution," by force of which, notwithstanding the omission in the charter, personal as well as real property must be assessed and subjected to the same public burden.   The first clause was therefore to be construed as if both kinds of property had been specified, and in the light shed upon the subject by other provisions of the Constitution.   Delivering the brief opinion of the Court, which seems to have been guided by the lucid argument of counsel, as to the sense in which the word "*property*" is used in that instrument, the Chief Justice remarks: "In regard to that word, by the by, we see that the Constitution does not make it include 'money, credits, investments in bonds, &c.'   'Real and personal property' is used in a sense to exclude such credits and investments.   Art. 5, §3."

Accepting this interpretation of the general term "property" with the prefix "real and personal" as used in the other section, "credits, moneys, investments in bonds, &c.," would not be included, unless it can be seen from the context that the word was employed in a more comprehensive sense and to fill a larger sphere of operation. except by force of the statute, (*Code*, §3765, par. 6,) enlarging its import.

So far from this, it seems to be as restrictive as when used in the Constitution. The charter imposes the liability only upon "persons and property *within the town*," and upon such only as are subject to county taxation under the general law, and its maximum measure is upon an *ad valorem* estimate of value. There are no associate words to indicate a larger meaning than the word itself conveys, but, on the contrary, the property must be located *within the corporate limits*, excluding such as has only the *situs* of the owner.

A similar restricted import has been given to the term in testamentary dispositions in several adjudications.

In *Pippin* v. *Ellison*, 12 Ired., 61, PEARSON, J., says: "The word 'estate' has a broader signification than the word 'property.' The former includes *choses in action*. The latter does not, and in reference to personalty is confined to 'goods,' which term embraces things inanimate, furniture, farming utensils. &c.; and chattels, which term embraces living things—slaves, horses, cattle, hogs, &c." This, of course, has reference to the residuary disposition of the testator's estate. *Scales* v *Scales*, 6 Jones Eq., 163; *Hastings* v. *Earp*, Phil. Eq., 5.

In *Hogan* v. *Hogan*, 63 N. C., 222, the bequest was "and should there be anything at my death undivided, it is my wish that it be sold, and equally divided among my four sons, after paying my funeral expenses and all just debts." In the opinion delivered by READE, J., the cases where a restrictive meaning is put upon the words *estate* and *property* are reviewed and distinguished from that then before the

Court, in that the property was to be sold, and the proceeds divided, and the words were of more limited signification, and not as broad as "anything," here used by the testator. But the previous rulings are put upon the ground, that as "credits and money" are not the proper subjects of sale, the intention cannot be imputed to the testator to embrace such in the direction to sell and distribute, and this method of interpretation, if correct, would equally apply to the clause recited. Nor do we see clearly the distinction pointed out in the terms of the bequests. In the other cases there was to be a sale, and the proceeds divided, and is not this the necessary consequence of executing a direction to sell and divide, for after a sale, what was there to divide but the proceeds arising from the sale? The decisions are therefore not in harmony, and are referred to as showing how the usual import of words may be restrained in their operation by the context.

Aside from these interpretations, we see no sufficient reason for departing from the adjudication in *Pullen* v. *Commissioners*, even if the reasoning were not entirely satisfactory to our own minds, and since the localizing words that follow the term must be understood as excluding such property as has no visible form or existence within the town, and attach to the person of the owner.

There is error, and the judgment must be reversed, and to this end, and that judgment be rendered for the plaintiff, this will be certified.

Error.                                                    Reversed.