CLAUDIA REDMOND v. THE COMMISSIONERS OF THE TOWN OF TARBORO.

*Constitution—Municipal Taxation—Solvent Credits.*

1. Article 7, § 9, of the Constitution was not intended to apply the rules of uniformity and equality to the subjects alone selected by the Legislature for taxation in granting a municipal charter, but requires that *all* property in the municipality shall be taxed, and taxed uniformly and equally.

2. The word "property," as used in Art. 7, § 9, of the Constitution, includes moneys, credits, investments and other choses in action.

3. Although the power of a municipal corporation to tax is not conferred by the Constitution, yet, where such power is exercised, the Constitution (Art. 7, § 9), independent of the provisions of the charter, *commands* that *all* property in such municipality, real and personal, including moneys, credits and the like, shall be taxed according to its value and by a uniform rule.

4. The words "all real and personal property," in Art. 5, § 3, of the Constitution, are to be taken in their most comprehensive legal import, and include every kind of real and personal property whatever, *not excepting* the several classes of personal property expressly mentioned in the first clause of the section.

(MERRIMON, C. J., dissenting.)

This was a controversy submitted without action under sections 567–569 of *The Code*, tried before *MacRae, J.*, at

Spring Term, 1888, of the Superior Court of EDGECOMBE County.

The following were the facts agreed:

1. That the plaintiff Claudia Redmond is a resident of the town of Tarboro, and has been for a number of years.

2. That in 1888, at the time required for listing property for taxation in said town, she refused to give in to the list-taker of said town $43,312 which she owned in solvent credits.

3. That, by an order of the Board of Commissioners of said town, the said solvent credits were ordered to be placed by the list-taker on the list, and were ascertained from the county list-taker's list, and were accordingly returned by the town list-taker on his list for taxation in said town, against the protest of the said Claudia, as was done in other like cases of solvent credits owned by persons resident in said town.

4. That of said solvent credits of plaintiff so placed upon the town list, $39,973.97 were owing by parties resident outside of the town, and such amount is secured on property not located within the limits of said town, and $3,328.03, or thereabout, were owing by parties residing within and citizens of said town, with the exception of a few dollars which she cannot accurately determine.

5. That the said Board of Commissioners, at their regular meeting in 1888, levied a tax of one-half of one percentum, or fifty cents on the one hundred dollars' worth of property, including solvent credits; in the words of the order, "that an assessment of fifty cents on the one hundred dollars valuation be levied on all property in the town of Tarboro not exempt from taxation, both real and personal included, all moneys, credits in bonds, stocks, joint stock companies or otherwise."

6. That the tax list for said year 1888–'89 was put in the hands of John W. Cotton, tax collector for said town, who

made demand upon plaintiff for the sum of $216.56, which said sum was for taxes on the solvent credits placed as aforesaid upon the list of taxables against the protest of plaintiff, at the rate levied aforesaid, and the plaintiff, under protest, paid the said sum for said taxes on solvent credits, and holds therefor the receipt of the tax collector.

7. That said plaintiff has made demand in writing on the defendant board for the return of said taxes, and they refused to pay over to her the same.

The question presented to the Court is whether the solvent credits so listed, or any part of them, are liable to the levy so made by the town of Tarboro.

The charter of the town of Tarboro, chapter 228, section 24, Laws 1876–'77, provides " that, for the improvement of said town (Tarboro), and for the payment of the expenses thereof, the commissioners shall annually, before the first day of July, levy a tax on all the real and personal property not exempt under the State laws in said town," &c., &c.

The Court gave judgment as follows:

" It is considered and adjudged that the solvent credits listed by the plaintiff are liable to the levy as made by the town of Tarboro. It is further adjudged that the plaintiff pay the costs of this proceeding."

The plaintiff excepted, and appealed.

Messrs. *John L. Bridgers, H. L. Staton* and *James Norfleet* (by brief), for the plaintiff.

Mr. *Donnell Gilliam* (by brief), for the defendants.

SHEPHERD, J.: The very important question presented by this appeal is whether the town of Tarboro has the power to levy a tax upon the solvent credits of its citizens.

It is necessary to an intelligent consideration of the question that we should review the several decisions of this Court in reference to municipal taxation, and extract from the con-

flict of authority and confusion in which the subject is involved the true principles governing such taxation. Section 9, Art. 7 of the Constitution, provides that " all taxes levied by any county, city, town or township shall be uniform and *ad valorem* upon all property in the same, except property exempted by this Constitution."

Does this provision simply apply the rule of uniformity and equality to the particular subjects which may be selected by the Legislature for taxation, or does it *command* that *all* property of whatsoever description shall be taxed, and taxed according to the said principles? If the latter be the correct view, and "moneys, credits, investments," &c., are embraced in the said section, it necessarily follows that all general laws and the special provisions of the charters of the various municipalities which conflict with the said provision of the Constitution are void, and that the refinements of construction which are sought to be applied to their particular phraseology become wholly impertinent to the present discussion.

1. We will first inquire, then, whether the said provision of the Constitution *commands* that *all property* shall be taxed.

"Taxes are defined to be burdens or charges imposed by the legislative power of a State upon persons or property, to raise money for public purposes" (Blackwell on Tax Titles), and the power to levy them is one of the essential attributes of sovereignty, and is inherent in, and necessary to, the existence of every government. *Knowlton* v. *Supervisors of Rock Co.*, 9 Wis., 418; *McCulloch* v. *Maryland*, 4 Wheat., 316.

In the absence of constitutional limitations there is, it is said, no restraint whatever upon the Legislature, and it may discriminate in favor of or against a particular class of persons or property, and pass laws in violation of every principle of just government, by an unequal distribution of the public burdens. The check upon such an abuse of power is in the influence of the constituents over their representatives;

and the weight of authority is that the Courts have no right to interfere with this exercise of the legislative will.

Thus it is seen that a wide field is open for a war between different classes of property, in that one class may be taxed to the exclusion or to the prejudice of another, and that under the forms of a free government, an excited partisan legislative majority may commit wrongs against the rights of property as flagrant and oppressive as those which have disgraced the reigns of the most despotic rulers.

But it is said that the General Assembly will be influenced by proper motives, and will levy taxes upon a just basis. Experience, in many of the States, has shown that the principles of taxation should not be left to the uncertainty or caprice of successive Legislatures, but that they should be fixed and immutable, and embodied in the fundamental law, under whose broad shield all property, of whatsoever species, may be equally protected.

This, we think, was the purpose of the framers of our Constitution in inserting therein the section referred to, as well as section 3, Art. 5, relating to State taxation.

No one who reads these and other provisions of the Constitution, will fail to be impressed with the earnest effort there made to engraft upon our organic law the great principle of equality in taxation.

"The subjects of every State ought to contribute to the support of the government, as nearly as possible, in proportion to their respective abilities, that is, in proportion to the revenue which they respectively enjoy under the protection of the State. The expense of government to the individuals of a great nation is like the expense of management to the joint tenants of a great estate, who are all obliged to contribute in proportion to their respective interests in the estate. In the observation or neglect of this maxim consists what is called equality or inequality of taxation." Such are the words of the author of "The Wealth of

Nations," quoted with approval by Judge COOLEY, and we think that they well illustrate the true spirit and purpose of our constitutional provisions upon the subject.

We are of opinion that section 9, Art. 7, was not intended to apply the rules of uniformity and equality to the subjects which the Legislature might alone select for taxation, but that it requires that all property shall be taxed, and taxed in accordance with the said rules.

A contrary view was taken by the Court, soon after the adoption of the Constitution, in the case of *Pullen* v. *Commissioners of Raleigh,* 68 N. C., 451. The charter enumerated eight subjects of taxation, "beginning with real estate situate in the city, and ending with encroachments on the streets by porches," &c.; but it did not include moneys, credits, &c. The Court affirmed the opinion of the Superior Court Judge, that the Constitution was "intended to declare simply the manner in which municipal corporations should levy taxes, to-wit, that they should be uniform and *ad valorem,* and not to declare the subjects to be taxed by them." The decisions in which this case has been cited (such as *Winston* v. *Taylor,* 99 N. C., 210; *State* v. *Bean,* 91 N. C., 554; *Latta* v. *Williams,* 87 N. C., 126, and perhaps others) have reference *only* to the taxing of trades, professions and the like, and these, not being property, are correctly placed within the principle declared therein.

Under the construction of the Constitution, as declared in *Pullen's* case, it would be in the discretion of the Legislature to unequally distribute the burden necessarily incident to government, and the worst species of class legislation would be tolerated. It would (says DIXON, C. J., in *Knowlton* v. *Supervisors,* 9 Wis., 422) "make the Constitution operative only to the extent of prohibiting the Legislature from discriminating in favor of particular individuals, and would reduce the people, while considering so grave and important a proposition, to the ridiculous attitude of saying to the

Legislature, 'You shall not discriminate between single individuals or corporations, but you may divide the citizens up into different classes as * * * owners of different species or descriptions of property, and legislate for one class and against another as much as you please, provided you serve all of the favored or unfavored classes alike,' thus affording a direct and solemn constitutional sanction to a system of taxation so manifestly and grossly unjust that it will not find an apologist anywhere—at least outside of those who are the recipients of its favors."

Such a construction, in our opinion, not only offends the true spirit of the Constitution, but has been distinctly and solemnly repudiated by the uniform decisions of this Court in subsequent cases. These cases decide that when the taxing power is exercised for a public purpose, the Constitution, and not the Legislature, declares *what* property shall be taxed, and that it requires that *all* shall be taxed and by a uniform rule and *ad valorem*. This construction is conceded, as to State and county taxation, under section 3, Art. 5, and we are unable to conceive why the same rule should not apply to section 9, Art. 7, as the language of the latter is even more imperative than that of the former.

In *Cobb* v. *Elizabeth City*, 75 N. C., 1, RODMAN, J., after quoting section 9, Art. 7, says: "All taxes, therefore, must be levied as well on personal as on real property, *notwithstanding any contrary provision in the charter.*"

In *Kyle* v. *Commissioners of Fayetteville*, 75 N. C., 445, it was decided "that shares of stock in a national bank are proper subjects of State, county and municipal taxation." The Court said (BYNUM, J., delivering the opinion) that, " in our view, it was unnecessary for the Revenue Act, or the charter of the town of Fayetteville to tax specifically the national bank shares of either residents or non-residents. * * * The *Constitution* seizes them and exacts from them their proportional share of the public burden. Neither

the Legislature nor the town corporation can exempt them from taxation without doing violence to the Constitution. * * * It is the provision and the purpose of the Constitution that thereafter there should be no discrimination in taxation in favor of any class, person or interest; but that everything possessing value as property, and the subject of ownership, shall be taxed equally and by a uniform rule. In this respect, the present Constitution shows no favors and allows no discretion. If, then, the town of Fayetteville has the power to tax, the Constitution steps forward and commands that all property shall be taxed and by a uniform rule." To the same effect are *Young* v. *Henderson*, 76 N. C., 420; *London* v. *Wilmington*, 78 N. C., 109; *Puitt* v. *Commissioners*, 94 N. C., 709.

The language of the Court in these decisions can admit of no question, and if anything further were needed to sustain the principles there laid down, we have the high authority of the late distinguished Chief Justice, in *Vaughan* v. *Murfreesboro*, 96 N. C., 317, who says that the Constitution (Art. 7, § 9) " commands that all taxes levied in any city, town or township, shall be uniform and *ad valorem* upon all property in the same, except property exempt by this Constitution; by *force of which,* notwithstanding the omission in the charter, personal, as well as real property, must be assessed and subjected to the same public burden." This overwhelming weight of authority, so consonant with the principles of equality in taxation everywhere pervading the fundamental law, conclusively establishes the proposition that wherever the taxing power is exercised for a public purpose, *all* property shall be taxed, notwithstanding any contrary provisions in the general law of the charter.

2. It only remains, therefore, for us to consider whether the word " property," in said section 9, Art. 7, includes moneys, credits, investments and other choses in action.

Considering the essential justice of the principles we have mentioned, and which are so plainly recognized in the several provisions of our Constitution, the mind naturally rejects, in their interpretation, any narrow or strained rules of construction which may be relied upon to defeat their beneficent purpose. These provisions should be construed in the light of their general spirit and intention, and thus full effect be given to the will of the people, as expressed in their fundamental law. Clear and convincing indeed, then, must be the reasoning which gives a restricted meaning to the word "property," when used in reference to municipal taxation, while, as to all other taxation, it is to be taken in its natural and general sense. Upon what principle can it be contended that one who has no tangible property, but who owns a hundred thousand dollars in solvent credits, may enjoy all of the conveniences, safeguards and other benefits of town life, and contribute nothing whatever in the payment of the common expenses? Yet such will be the effect if the restricted interpretation contended for is to prevail. It is clear that all who enjoy these privileges should pay their part of the expenses. For instance, the evidences of these very solvent credits receive greater protection by the police of a town, and yet the police are to be paid only by those who own tangible property. No good reason can be assigned in support of such an unjust discrimination, while every principle of justice and common fairness sternly forbids it. In support of this restricted interpretation of the word "property," the plaintiff relies upon the case of *Vaughan* v. *Murfreesboro, supra.* The charter provided that the tax should be levied "upon all persons and property within the town subject to taxation for county purposes, under the general laws of the State." Under sections 3 and 6, Art. 5, of the Constitution, there can be no question but that choses in action were taxable for county purposes, but it was held that under the charter they were not included. It is not easy to understand how

the language of the charter was material to the decision of the case, as the opinion, as we have seen, fully committed the Court to the principle that the Constitution, and not the charter, determines what property shall be taxed.

While the opinion lays much stress upon the "localizing" words (" within the town ") which are used in the charter, it seems to approve of the following *dictum* in *Pullen* v. *Raleigh, supra:* " In regard to that word (property), by the bye, we see that the Constitution does not make it include money, credits, investments in bonds," &c. These words are spoken of in *Vaughan's* case as an " adjudication," when, from an examination of the opinion, it will appear that the decision rested entirely on the ground that the objects to be taxed depended "upon the charter," and the charter having enumerated eight specific subjects, in none of which were embraced "debts and securities for money," the latter were excluded.

So far from adjudicating the meaning of the word, the learned Chief Justice is careful to say that "the word ' property,' about which so much was said on the argument, is not embraced in that enumeration of the subjects of taxation." The *dictum* is founded *solely* upon the supposed distinction made in the use of the words " real and personal property " in section 3, Art. 5, which words, it is said, are " used in a sense to exclude such credits and investments." The section is as follows:

" Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and also all real and personal property, according to its true value in money." The suggestion is (for, after all, it is but a suggestion), that by the verbal arrangement of this section, the words " real and personal property " are so restricted in their meaning as to exclude moneys, credits, &c., and that this limited sense is

to be attached to the word "property" as used in section 7, Art. 9.

It, therefore, becomes material that we should examine section 3, Art. 5, and ascertain whether there is, in fact, such a distinction as is contended for.  It is true that the meaning of the section is not very happily expressed, but it must be construed with reference to the context and spirit of all the constitutional provisions upon the subject, and their general intent and purpose cannot be defeated by the confused arrangement of words, or, as is suggested, by the presence of a semicolon between the two first clauses, since, even in the interpretation of an ordinary deed, punctuation must be disregarded, and words may be transposed to "bring them to the intent of the parties." *Bunn* v. *Wells*, 94 N. C., 67.

Let us now see whether such a distinction exists, or has ever been recognized and acted upon by this Court.  If there be such a distinction, the argument founded upon it must be followed to its logical results, and it cannot be used in the construction of one section of the Constitution and abandoned as to others.  Now, if the words "real and personal property" are used in the second clause in such a sense as to exclude "moneys, credits," &c., and the two clauses are divorced, as is argued, by a semicolon and the words "and also," and are therefore entirely independent of each other, upon what rule of construction has this Court so often applied the principle of *ad valorem*, mentioned in the second clause, to the "moneys, credits," &c., mentioned in the first clause?  Clearly, this cannot be done but by holding that the words "real and personal property" include "moneys, credits," &c.

Again, if these clauses are independent of each other, how, we may ask, has this Court so frequently applied the rule of uniformity contained in the first clause to the real and personal property contained in the second clause?

These considerations alone ought to be sufficient to meet the supposed distinction upon which the *dictum* is founded.

We are not without aid, however, in the construction of this provision of the Constitution. It seems to have been taken from the Constitution of Ohio, as the language is precisely the same.

In that State, in the case of *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St., 1, an effort was made to draw the very distinction which we have been discussing, and the Court said: " But it is argued that the uniform rule in taxing, required by the Constitution, applies only to moneys, credits, investments in bonds, &c. Why should so important a rule as that of uniformity in taxation be established by the Constitution and then limited in its operations to a few specific classes of personal property ? It is said that all other property is to be taxed ' *according to its true value in money.*' This requirement, however, only fixes the standard for ascertaining the taxable valuation, and does not necessarily imply equality and uniformity, either in the rate and mode of assessment or the different localities throughout the State. The taxable valuation may be fixed according to the true value in money, and yet discriminations may be made between different classes of property and different localities in the State imposing unequal and unjust burdens of taxation." ·

In speaking of the first clause, it is said that, " This provision, arising out of abundant caution, was not intended to give these enumerated things any new distinctive classification, nor does it, in fact, exclude them from the denomination of personal property, to which, by their nature and legal incidents, they belong. Mr. Broom, in his 'Selections of Legal Maxims' (page 415), says 'that the maxim, '*Expressio unius est exclusio alterius,*' requires always great caution; thus, where several words are used in a written instrument, it is necessary, in the first instance, to determine whether those general words are intended to include other matters besides such as are specifically mentioned or to be referable exclusively to them, in which latter case only can the above

maxim be properly applied.' In the interpretation of legal instruments, words used out of abundant caution are often to be tolerated at the expense of tautology.

"The object of the language of the Constitution under consideration was comprehension, not exclusion. The words 'all real and personal property,' therefore, in the second clause of the section are to be taken in their most comprehensive legal import, including every kind of real and personal property whatsoever, *not excepting* the several classes of personal property expressly mentioned in the first clause of the section. If this interpretation be in any sense liable to the charge of tautology, it certainly is not to that of repugancy. If this had not been the meaning intended by the framers of the Constitution, there would have been added to the words 'all real and personal property' these words, 'other than that above mentioned.' It is more in harmony with the settled rules of construction, to convict the law-makers of some inelegancies in rhetoric and the use of unnecessary words, than to depart from the leading object and intent of the instrument. * * * Any other interpretation than this would lead to consequences at variance with the manifest spirit and true intention of the Constitution. If moneys, credits, investments in bonds, stocks, joint stock companies, &c., may be subjected to a different rate of taxation from that imposed on other kinds of property; or if moneys, credits, investments in bonds, stocks, &c., may be taxed at less than their true value in money, while all other property is required to be taxed at its true value, in either case, great and unfair inequalities may be created by legislative discretion. * * * There can exist no sound reason why a person, whose property consists of moneys, credits, stocks, &c., should bear a less burden of taxation than that which is imposed on lands and chattels of the agriculturist, the implements, machinery and materials of the manufacturer, or

the goods and wares of the merchant; and the Constitution, truly interpreted, recognizes no such distinction."

This case was decided in 1853, and has been cited with approval by this Court in *Worth* v. *Railroad,* 89 N. C., 301, in which it is said that the provision under consideration "was copied from the Constitution of Ohio." The construction put upon it, therefore, by the Supreme Court of that State is entitled to great weight. "Where the terms of a statute which has received judicial construction are used in a later statute, whether passed by the Legislature of the same State or country, or by that of another, that construction is to be given to the latter statute." *Comm.* v. *Hartwell,* 3 Gray, 450; *Ruchmaybe* v. *Mottichmed,* 32 Eng. L. & Eq., 84; *Bogardus* ·v. *Trinity Church,* 4 Sand. Chan., 633; *Riggs* v. *Wilton,* 13 Ill., 15; *Adams* v. *Field,* 21 Vt., 256. "It is presumed that the Legislature which passed the latter statute knew the judicial construction which had been placed on the former one, and such construction becomes a part of the law." Potter's Dwarris Statutes, 274, note; *Bridgers* v. *Taylor,* 102 N. C., 89.

The foregoing rule, while not absolutely binding, is used as a valuable aid in the construction of laws.

This high authority determines, we think, that the words "real and personal property," as used in the said section, comprehend moneys, credits, investments, &c., and that there exists no such distinction as that relied upon to sustain the argument which seeks to place a restricted meaning upon the word "property" when used in other parts of the Constitution, and especially in section 9, Art. 7.

If the latter construction prevails, much obscurity, confusion and conflict will be introduced into the organic law which can easily be avoided by holding, as we do, that section 9, Art. 7, is but a concise form of expressing the principle contained in section 3, Art. 5, the difference in the language employed being attributable to the probability that

the two sections were framed by different committees of the convention.

A contrary construction would lead to results which were little contemplated by the framers of the Constitution. For instance, if the word "property," in section 9, Art. 7, does not comprehend "moneys, credits," &c., they are without the pale of constitutional protection, and municipal corporations may tax them without regard to the rule of uniformity and equality.

Thus it will be in the power of the Legislature to put the entire or an unequal part of the burden of municipal government upon moneys, credits, investments in bonds, stock, &c., and, in this way, indirectly confiscate this species of property.

Such an abuse of the taxing power would, in the language of MILLER, J. (delivering the opinion of the Supreme Court of the United States in the case of *The Loan Association* v. *Topeka*, 20 Wall., 655), be " none the less a robbery, because it is done under the forms of law, and is called taxation." And it is manifest that such an unlimited power of discrimination was not intended to be permitted by the Constitution.

It should, therefore, be a matter of serious consideration to the owners of this species of property, that in attempting to escape the payment of their part of the public municipal burdens, they are invoking a principle which excepts them from the protecting power of the limitations contained in the organic law. Another incongruity growing out of the construction contended for, is presented by section 6, Art. 6, which provides that county taxes "shall be levied in like manner with State taxes." State taxes, as we have seen, must be levied on moneys, credits, &c., by a uniform rule and *ad valorem*. The word " county" is, for some purpose, inserted in section 9, Art. 7, preceding the words " city, town or township." Now, if this section is to have any effect upon county taxation, and the word "property " is to be taken in

its restricted sense, we have a direct conflict with section 3, Art. 5, both in respect to the subjects of taxation and the principles by which such taxation is governed.

Again, if such an interpretation is correct, it must be followed in section 1, Art. 5, which provides that "the General Assembly shall levy a capitation tax on every male inhabitant of the State, .* * * which shall be equal on each to the tax on *property* valued at three hundred dollars in cash. * * * * And the State and county capitation tax combined shall never exceed two dollars on the head." As the word "property" alone is used, moneys, solvent credits, &c., constituting, it is estimated, one-eighth of the taxable values of the State, would be excluded from the benefit of the limitation in the above section, and would not enter into the calculation of the amount to be raised at any given per cent. on the equation system for State or county purposes.

In passing, we will remark that the importance of imposing some restriction upon city and town authorities as to this species of property is enhanced by the fact that this Court has held that the constitutional limitation as to the *per centum* on the value of property does not apply to such municipal corporations. *Young* v. *Henderson, supra; French* v. *Wilmington,* 75 N. C., 482.

It does not follow, however, that because there is only a legislative limitation the principle of equation shall not be enforced, nor that the municipality may not collect from polls an amount equal on each to the tax imposed for municipal purposes on property worth three hundred dollars. In which case there would be no obligation to devote it to the support of schools and the poor, as section 2, Art. 5, only directs the application of the capitation tax collected for State and county purposes.

These views are presented to illustrate how the whole system of taxation growing out of the construction we have given to the organic law could be made to operate harmo-

niously, as well as justly, whether imposed by the State or a municipal corporation under the powers conferred up it.

Just here we will notice an argument derived from the language of the foregoing provisions of the Constitution. It is said that because property is there required to be valued at its true value in cash, it is a recognition of the distinction in section 3, Art. 5. This is a *petitio principii* as the existence of such a distinction is the very point in question. We have shown, we think, both by reason and authority, that no such distinction exists, and that the said section means that all property, of whatsoever description, must be taxed at *its true value,* and by a uniform rule. Upon this we have also a legislative construction in chapter 218, Acts 1889, § 18, where solvent credits, investments, &c., are required to be taxed at their " true current or market value."

We will also add the remark of RODMAN, J., in *Wilson* v. *Commissioners, supra,* that such a construction of the word would place this class of property outside of the Bill of Rights, in respect to jury trial and other privileges guaranteed therein, as the word "property" only is there used. It must be apparent to every one that if such a finely drawn distinction is to be deduced from an involved sentence and made the basis of a limited definition of the word "property," we will meet with nothing but confusion and incongruities in many parts of the Constitution; whereas, if the general and legal meaning of the word is adopted, all of its provisions will be in perfect accord, working out together the benign principles of equality and uniformity in taxation.

For the foregoing reasons, we think that the *dictum* in *Pullen's* case was unfounded, and it is singular that it should still be quoted as authority. It was clearly not so regarded by its author, the distinguished Chief Justice, as we find the same Court over which he presided with such great ability, declaring, in *Wilson* v. *Commissioners of Charlotte, supra,* that " such an inference is hasty and cannot be fairly drawn,"

and unanimously deciding that the word " property," as used
in section 9, Art. 7, *does* include money, credits, &c.   Again,
in *Wheeler* v. *Cobb, supra,* the Court held that the word
" property" includes bonds, stocks, solvent notes, &c.

In *Kyle* v. *Commissioners, supra,* the Court said (BYNUM,
J. delivering the opinion): "For wherever the power to tax
is exercised, all taxes, whether State, county or town, by force
of the Constitution, must be imposed upon all the real and
personal property, moneys, credits, investments in bonds,
stocks," &c.

In *Pruitt* v. *Commissioners, supra,* the late learned Chief
Justice, in delivering the opinion of the Court, quoted the
foregoing language with unqualified approval.   These well
considered cases, it seems to us, establish as well as judicial
authority can establish anything, that the word " property"
used in said section is not to be taken in the restricted sense
as suggested, but that it includes " moneys, credits, invest-
ments, or any other chose in action."

But the opinion in *Vaughan's* case does not rest alone
upon the "hasty" inference alluded to, but apparently seeks
the aid of the common law definition of the word " prop-
erty."   The cases referred to are where it is used in residuary
clauses of wills, in which a sale and division of the proceeds
were directed.   It was held, says Justice READE in *Hogan* v.
*Hogan,* 63 N. C., 223, "that money on hand and choses in
action did not pass, the *prominent* reason being that they are
not ordinarily the subject of sale, and in all the cases a sale
was directed and a division of the proceeds."

Judge RODMAN, in *Wilson* v. *Charlotte,* after examining
one of the cases and showing that the decision was con-
trolled by the context of the will, remarks that "there can
be no doubt, I suppose, that a bequest of 'all of my property'
to A. would pass bonds belonging to the testator."   It is
hardly necessary, however, to pursue this phase of the dis-
cussion further, as the opinion in *Vaughan's* case admits

that these decisions are not in harmony, and are referred to as showing how the *usual import* of words may be restrained in their operation by the context."

While we do not for an instant concede that the manifest spirit and intent of the organic law of a State is to be controlled by the strict technical definitions of the common law as applied to wills and other dispositive instruments, we will insert some authorities which plainly show that at common law the word "property," when not limited by the context of the instrument in which it is found, includes choses in action.

It is a *nomen generalissimum.* "Standing alone, the term includes everything that is the subject of ownership." Anderson's Dict. of Law. "Property" includes not only ownership, estates and interests in corporeal things, but also rights, such as trade-marks, copyrights, patents and rights *in personam* capable of transfer or transmission, such as debts. See *Burchill* v. *Pugin*, L. R.; 10 C. P., 397; 2 Aust. Juris., 817, *et seq.* "Property," in a policy of insurance, has been held to include current bank bills owned by the assured. 5 Metchalf Rep., 1. The terms "goods and chattels" include choses in action. 12 Co., 1; Atk., 182. The word "property" includes choses in action as well as choses in possession. It includes money due as well as money possessed. *Carlton* v. *Carlton*, 72 Me., 116; *Ide* v. *Harwood*, 30 Minn., 195. "A credit," says Judge READE, in *Lilly* v. *Commissioners*, 69 N. C., 307, "is property, and, as such, is liable to taxation as any other property." In *Adams* v. *Jones*, 6 Jones' Eq., 221, MANLY, J., speaking for the Court, said that "the share of stock in the R. & G. Railroad Company is property to be sold under the 11th clause of the will. The word is among the most comprehensive of those in use to signify things which are owned, and subject to be owned and enjoyed."

Speaking of constitutional provisions similar to ours, Cooley on Taxation, 134, says: "These provisions preclude

discrimination in favor of or against any classes of property or persons whatsoever; they require the taxation of loans or any other credits, these being property as much as lands or chattels in possession."

Moreover, we have a legislative interpretation of the word which is to be used "in the construction of all statutes," and which reflects much light upon its meaning when used in the Constitution. *The Code*, § 3765, provides that "the words 'personal property' shall include moneys, goods, chattels, choses in action and evidences of debts, including all things capable of ownership not descendible to the heirs at law. The word 'property' shall include all property, both real and personal." To the suggestion that this view of the subject will discourage the investment of capital in towns and cities, we answer that such a consideration should have no weight in a legal discussion, but that it is not true that such a result will follow, as the owner of solvent credits, &c., is only taxed, as to them, at the place of his domicile.

After this lengthy discussion, made necessary by the doubt and obscurity into which the subject has fallen, and sustained, as we are, by the general intention of the Constitution as interpreted by the repeated decisions of this Court and other weighty authorities, we conclude that, although the power of a municipal corporation to tax is not conferred by the Constitution, yet, when such a power is exercised, the Constitution "steps in," and, without regard to the provisions of its charter, *commands* that *all* property therein, real and personal, including moneys, credits, &c., shall be taxed, and that it shall be taxed according to "its true value in money," and by a uniform rule.

This, we feel sure, is in accord with the true spirit and meaning of the fundamental law, whose evident purpose is not to be defeated by a construction based upon a supposed distinction growing out of "inelegancies in rhetoric" and the improper punctuation of one of its provisions.

For the reasons given, it is unnecessary that we should examine into the provisions of the charter. We are of opinion that his Honor properly held that the solvent credits of the plaintiff were liable to taxation by the defendant corporation.

MERRIMON, C. J.—(dissenting): I do not concur in the decision of this case, and, as it is one of moment, I will state some of the grounds of my dissent.

The decision of the question raised by the assignment of error must depend upon the proper interpretation of several important provisions of the Constitution, affecting, as they do materially, the whole subject of taxation. Their true meaning is not entirely free from doubt, and to settle this is the more embarrassing, as such provisions have come before this Court repeatedly, and its decisions in respect to some aspects, of them are not, as will be seen, in harmony with each other.

Article 5 of the Constitution is entitled, "*Revenue and Taxation,*" and is devoted mainly to the designation and classification of the several subjects of taxation, as to the particular kinds and character of them, and the methods of levying taxes. These distinctions and classifications are fundamental, and must be observed, and prevail in all proper connections. Moreover, terms used must be strictly applied in the sense in which they are employed.

The first section of the article just cited provides and declares that, " the General Assembly shall levy a capitation tax " as therein prescribed, which shall be equal on each person subject to it, " to the tax on *property* valued at three hundred dollars in cash," and "the State and county capitation tax combined shall never exceed two dollars on the head."

The third section thereof provides that " Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise;

and also all real and personal property, according to its true value in money. The General Assembly may also tax trades, professions, franchises, and incomes, provided that no income shall be taxed when the property from which the income is derived is taxed." These sections are general, leading and controlling as to the subjects of taxation for general purposes, and as to how the same shall, or may be, taxed.

It will be observed that there are four distinct classifications of subjects: First, that of "capitation tax," which is defined and limited, and the limitation is based on the prescribed valuation of *property*, classified as such because such property, as we shall presently see, *must* be taxed according to its *value*, and thus it has that quality of definiteness. This is important for such purpose, and as tending to show the meaning to be attributed to the term "property."

A second classification is that of moneys, credits, investments in bonds, or however made, as such, all of which must be taxed "by a uniform rule"—not necessarily according to their value in money, but each of the subjects so enumerated must be taxed in the same way as the others and in the same measure, whatever this may be. Thus, they may be taxed according to their value, or a fixed per cent., or otherwise, "by a uniform rule," in the wise discretion of the General Assembly. It must pass laws taxing such things, but it is left to judge of the expediency of taxing them more or less, and the particular method of taxing them by a uniform rule as indicated. Money, in general, passes rapidly from one person to another. Credits, bonds and investments are very variable and uncertain, and often precarious in their values, and, therefore, considerations of justice and public policy might induce the Legislature to tax them at a greater or less rate as a class of subjects of taxation than other like subjects. Such seems to have been the reasons, or some of them, for such classification. Any-

how, the Legislature is invested with such power. The classification distinctly appears; the constituent parts of it are enumerated and must be taxed, and it is particularly prescribed that they must be, "by a uniform rule"; there is no other limitation or restriction on the power of taxation as to them. This classification is distinctly separated from that which next follows it in sense and application by a semicolon, while the succeeding one specifies another subject designated as "real and personal property," as distinguished from the next preceding one, which must be taxed "according to its true value in money." The distinction so prescribed would be unnecessary and nugatory, if the subjects embraced by it were put on the same footing and in the same classification with "real and personal property." The distinction specified can, and must, mean something— serve some purpose—and it is difficult to see that it means anything else than the clear classification indicated.

A third classification is that of "all real and personal property" (with specified exceptions), which must be taxed "according to its true value in money." Thus a clear and important fundamental distinction, for the purposes of taxation, is made between "moneys, credits and investments," as specified, and "property." The latter term is used in the limited sense of realty—land—and personalty, tangible things other than such as are specified in the second and fourth classifications prescribed. While the term "property," in its broadest and most general signification, embraces all kinds of property, including choses in action, rights and credits, and the like things, it is very often and conveniently used in its limited sense, as in the connection under consideration, and this is so notwithstanding the statutory provision (*The Code.* § 3765, par. 6). This provision could not affect the meaning of terms employed in the Constitution; indeed, it purports to apply only to statutes, and to them, when

the meaning is manifestly otherwise than as therein provided and defined.

" Real and personal property " thus classified, is such property as is most durable, less transitory, more uniform and steady in its value, and more generally owned and used by individuals of all classes and conditions than any other. It constitutes, ordinarily, the most certain and leading subject of taxation in every respect. Hence, the Constitution classifies it, and prescribes a just and reasonable rule of taxation as to it, that puts it beyond the control of the Legislature, except as to the measure of the taxes levied. The rule as to it is, in effect, that it must be taxed uniformly and *ad valorem*, because all lands must be taxed.

A fourth classification is that of "trades, professions, franchises and incomes." It is not made mandatory upon the General Assembly to pass laws taxing these subjects of taxation. It is left to it to determine when it is just and expedient to do so. There might be reasons of justice and public policy that would render it unwise to impose a tax on them. And, for the like reason, the tax, when levied, is not necessarily to be uniform. It might be wise to tax some trades, professions, franchises and incomes and not others, and at one time and not at another. The subject is intentionally left to the wisdom and discretion of the Legislature.

Thus, the subjects of taxation and the methods of taxing them for the purpose of raising the general revenues of the State are prescribed and established by the Constitution.

In section 6 of the same article of the Constitution, it is provided that " the taxes levied by the commissioners of the several counties for county purposes, shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, except for special purposes, and with the special approval of the General Assembly." The several counties are constituent parts of the State, and are political

106—10

instrumentalities thereof, intended to promote and aid in the administration of the government, particularly in the localities where they are situate.    It is in and through them, to a. very large and material extent, that the government is administered and the public revenues necessary for that purpose are correspondingly large.    Hence, the provision just recited finds an appropriate place in the article of the Constitution on the subject of "Revenue and Taxation"; and hence, also, the general revenue laws of the State embrace counties, and the raising of revenue through them for their proper county purposes.    Hence, too, the provision in the section last recited, that "the taxes levied for county purposes shall be levied in like manner with State taxes," implies that they shall be levied "in like manner" in all respects, including the subjects of taxation.    Otherwise, the "like manner" would be partial and not to the whole extent as intended.

The article of the Constitution cited above makes no reference to taxation of cities and towns.    In another article— that entitled "Municipal Corporations"—(section 9 thereof) it is provided that "all taxes levied by any county, city, town or township, shall be *uniform and ad valorem* upon all *property* in the same except *property* exempted by this Constitution." The term "property" thus employed is used in the same restricted sense, and for the like purpose, that it is in the third class of subjects of taxation already adverted to above. It applies.to the same subjects of taxation, and must be taken in the same sense, nothing to the contrary appearing, and nothing does so appear.    By the third classification mentioned, "all real and personal property," as pointed out above, must, in effect, be taxed uniformly and *ad valorem*, and thus it likewise appears that the word "property" is used in the same sense in both of the sections recited. Indeed, the intention of the last recited section is to exclude the possible inference and conclusion that "municipal cor-

porations" could levy taxes on "property"—real and personal property—otherwise than as the Legislature might do for the general purposes of the State, and to prevent the Legislature from allowing them by statute to do so. Moreover, the use of the word "property" in the exceptive provision of the section last recited, also tends to show that it is used in the restricted sense. Such corporations shall not levy taxes upon "property" exempt by the Constitution, and all such "property" is real and personal, in the restricted sense of that term. (See Art. 5, § 5). Besides, to use the term "property" in the last recited section in its broadest sense, would render that section as to counties incompatible with Art. 5, section 6, above recited. This section requires that taxes for county purposes must be levied in "like manner with the State taxes." It is certainly unreasonable and unwarranted to merely infer, in the face of what so appears to the contrary, that cities and towns may—must—levy taxes uniform and *ad valorem* upon all "property" embraced by that term used in its broadest sense. Cities and towns cannot levy taxes at all except as the Legislature may allow them to do so, and when they are allowed to levy taxes on property simply, this implies property in the limited sense, and taxes levied upon the same must be "uniform and *ad valorem.*" They cannot tax one sort of such property and not another, nor can they levy a tax otherwise than *ad valorem.* The Constitution has fixed the meaning of the term "property" when used in connection with the subject of "Revenue and Taxation," and that meaning must be accepted and acted upon. The Legislature can only levy taxes on the subjects of taxation accordingly as classified, and in the way prescribed and allowed by the Constitution.

There is no provision of the Constitution that requires or allows cities and towns, where they already exist, or shall be created, to levy taxes for their purposes on all or any property of any kind whatever within them, nor is there any

such provision that requires the Legislature to confer upon them power or authority to do so. The single provision as to them in respect to taxation is, that " all taxes levied by " them " shall be uniform and *ad valorem* upon all property in the same." This must imply, when they shall be allowed, by appropriate enactment of the Legislature, to levy taxes on *property* as explained above. The purpose of the provision is to prevent cities and towns from taxing one species of property they may be allowed to tax and not another, and one kind more than another, and likewise to prevent the Legislature from allowing them to do so.

The Constitution does not regulate the subject of taxation in cities and towns otherwise than as just explained. It is left to the Legislature to allow them to tax property, moneys, credits, investments, trades, professions, franchises and incomes as it may deem wise and expedient; but it is not bound to do so, nor is it required to allow them to tax all such subjects of taxation, or none.

Moreover, it is unreasonable and unwarranted to make Art. 5, section 3 of the Constitution apply to cities and towns and not section 1 thereof, in respect to the *equation of taxation*. What reason can be suggested for such discrimination? Taxation may be unlimited as to towns—it *must* be limited as to the State and counties!

The power of the Legislature to confer upon cities and towns powers of taxation, grows out of its power to create and invest them with such powers as it may deem proper, not inconsistent with the Constitution. The power to create them implies the power to effectuate the purpose by proper pertinent means.

It is wisely left to the Legislature to determine what powers of taxation they shall exercise, and what subjects thereof they may tax. They are not regular instrumentalities of government like counties. Their purposes are special in a large degree; they afford the people who live in

them special advantages, oftentimes varied and peculiar in
their nature; they possess more corporate powers and func-
tions than counties, and serve the purpose of the corpora-
tors as such much more than the same of the public and
government.    Hence, what powers of taxation, and what
they ought to tax, may depend largely upon their circum-
stances and conditions, the population, the kinds and char-
acter of their business, their industries, the volume of busi-
ness done by them, their locations and like considerations.

In *Pullen* v. *Raleigh*, 68 N. C., 451, it is distinctly held
that the power of city authorities to levy a tax upon "debts
and securities for money held by the citizens depends upon
the charter," and that they can only levy taxes on such
subjects of taxation as are specified therein; and, therefore,
the city of Raleigh could not levy a tax upon money and
credits of its citizens, as such subjects of taxation were not
specified in its charter.    The Court say, in respect to the
word "property," that the Constitution (Art. V, § 3) does
not make it include "money, credits, investments in bonds,"
&c., and that "real and personal property" is used in a sense
to exclude such "credits and investments."    The opinion is
brief and not very satisfactory, but the case has been cited
with approval in numerous cases. *Wilson* v. *Charlotte*, 74 N. C.,
752; *Latta* v. *Williams*, 87 N. C., 126; *State* v. *Bean*, 91 N. C.,
554; *Winston* v. *Taylor*, 99 N. C., 210.    In *Vaughan* v. *Murfrees-
boro*, 96 N. C., 317, a recent case, it is cited and commented on
at considerable length and approved as good authority; and
it was held in that case—the latest—that where a statute
allowed a town to levy a tax upon all *persons and property*
within the same, it did not authorize a tax on solvent credits,
moneys or bonds.    This case, that of *Pullen* v. *Raleigh*, *supra*,
and other like cases, are necessarily overruled by the present
one.

In *Wilson* v. *Charlotte*, *supra*, it is strongly suggested that
the term "property," as used in Art. 7, section 9, is not con-

fined " to tangible property;" but this was no more than a suggestion, because, in that case, the charter of the defendant, in terms, expressly allowed it to tax all subjects of taxation. This case is cited in *Cobb* v. *Elizabeth City,* 75 N. C., 1, as authority to support the decision therein, that under the Constitution (Art. 7, § 9) all taxes " must be levied as well on personal as on real property, notwithstanding any contrary provision in the charter. The word 'property' includes bonds, stocks, solvent notes," &c. This is an extreme view, and the Court give no reason for it—it simply so decided.

In *Kyle* v. *Mayor,* 75 N. C., 445, it is broadly held, without citing any authority, that inasmuch as the town of Fayetteville possessed the power of taxation, therefore, perforce of the Constitution (Art. 5, § 3; Art. 7, § 9), the town *must* tax all the real and personal property, moneys, credits, &c., situate in the town.

In such a state of conflict and confusion of authorities in a respect so important, I deem it the duty of the Court to put an end to doubt and such conflict, as far as practicable, by its decision in this case. It will be observed that I have followed, mainly, *Pullen* v. *Raleigh, supra,* and the cases in harmony with it. It seems to me that the interpretation I have given the clauses of the Constitution cited and commented upon is reasonable, as well as necessary to the free and efficient operation of the organic law in respects of serious moment to the people. Moreover, what I have said is sustained in material measure by a line of decisions already cited.

In the present case, the charter of the defendant town allowed it to levy a tax " on all the *real and personal property,* not exempt under the State laws, in said town," &c. As has been seen, such provision did not confer on the defendant power to tax moneys and solvent credits.

It, therefore, had no authority to tax the credits of the plaintiff, as it undertook to do, unless it had such authority

by virtue of the general statute (*The Code*, § 3800), which provides, among other things, that the commissioners of towns may "lay taxes for municipal purposes on all persons, property, privileges and subjects within the corporate limits, which are liable to taxation for State and county purposes." I think it had no authority thus conferred, because its charter specified particularly the subjects of taxation it might tax, and the same statute (*The Code*, § 3827) provides that "this chapter shall apply to all incorporated cities, towns and villages, where the same shall not be *inconsistent* with special acts of incorporation, or special laws in reference thereto," &c. The limited power to tax "real and personal property" is not consistent with the larger power to tax all subjects of taxation. For some reason the Legislature limited the defendant's power in such respect. It is not to be presumed that nothing was intended by such limitation. If the general statute would apply, then the limitation was useless—served no purpose.

I think there is, therefore, error. The judgment ought to be set aside, and judgment entered in favor of the plaintiff in accordance with the stipulation in the controversy submitted.

*Per Curiam.* Judgment affirmed.