## CHESTER COUNTY v. WHITE.

TAXES—COUNTY BONDS.—THE GENERAL ASSEMBLY may exempt from taxation all property falling within the enumeration in sec. 1, of art X., of the Constitution, and under this power may exempt in the act authorizing their issuance bonds issued by a county to. pay its present bonded debt.

Before GAGE, J., Chester, January, 1905.     Reversed.

Controversy without action of Chester County against White Bros. and Winnsboro Bank. The agreed statement of facts is as follows:

"The parties above named, for the purpose of submitting to the Court, without action, a matter of controversy between them, under section 374 of the Code of Procedure of this State, hereby agree to the following statement of facts:

"1. The plaintiff, Chester County, is a corporation under the laws of this State, and the defendants, John G. White and Thomas H. White, are copartners under the firm name of White Bros., doing business as bankers in the city of Chester, in the county of Chester, in the State aforesaid, and are taxpayers in said city and county, and the defendant, the Winnsboro Bank, is a corporation duly incorporated under

the laws of this State, and doing a banking business in the town of Winnsboro, in the county of Fairfield, and State aforesaid, and is a taxpayer in said town of Winnsboro, and county of Fairfield.

"2. The said county of Chester, by an act of the General Assembly of South Carolina, approved March 17th, 1874 (see vol. 15, Statutes at Large, pages 668 and 669), was authorized to issue, and did issue, in aid of the Cheraw and Chester Railroad Company, coupon bonds to the amount of $75,000; and in accordance with the provisions of said act, said county received an amount of the preferred stock of said railroad company equal to the amount of said bonds, but the said preferred stock never yielded said county one cent in the way of interest, dividend or otherwise, and that the existence of said company was long since terminated by a foreclosure sale on behalf of the company's bondholders, and said county will never derive one cent from said preferred stock.

"3. The General Assembly of the State of South Carolina, by an act, approved the 18th day of February, A. D. 1904, enacted in the first section thereof as follows: 'That for the purpose of refunding the present bonded indebtedness of the county of Chester upon bonds issued in subscription for preferred stock of the Cheraw and Chester Railroad Company, under the authority of an act of the General Assembly, approved 14th March, 1874, and being No. 581, of vol. XV., of the Statutes at Large of South Carolina, pp. 668 and 669, which bonds fall due on 1st of February, 1905, the county board of commissioners of the county of Chester be, and hereby are, authorized and empowered to issue and sell interest-bearing coupon bonds of said county, payable to bearer, in such denominations as they may deem best, for the said sum of $75,000, and bearing interest at a rate not exceeding four and one-half per cent. per annum, payable annually on the first day of February of each and every year, to bear date the first day of February, A. D. 1905, to

be made payable twenty-five years from the date thereof, with the right to redeem and retire the same, or any part thereof, after fifteen years, and to be made payable in any legal tender of the United States; and said bonds shall be exempt from all State, county and municipal taxes.'

"4. The county board of commissioners of said county of Chester, by section 3 of the said act of the General Assembly, were authorized to 'negotiate and sell said bonds for cash and for not less than par,' and with a view thereto published in various newspapers the following advertisement inviting sealed proposals:

" '*Chester County, S. C., Bonds for Sale.*

" 'Sealed proposals will be received by the county board of commissioners of Chester County, at Chester, S. C., until 12 o'clock, noon, December 5th, 1904, for the purchase of seventy-five thousand dollars ($75,000) four and one-half per cent. coupon bonds, of the denomination of $500.00 or $1,000.00 each, of Chester County, dated February 1st, 1905, and due twenty-five years from date, with option of prior payment after fifteen years from date, and issued for the purpose of refunding a like amount of outstanding bonds due February 1st, 1905, and issued in aid of the Cheraw and Chester Railroad Company. These bonds will be exempt from all State, county and municipal taxes, and are the only debt upon the county. They are authorized by an act of the General Assembly of South Carolina, approved February 18th, 1904 (vol. 24, Stat. 607), and a sinking fund for their payment is provided for by said act. No bid for less than par will be considered, and each bid must be accompanied by a certified check for $1,000, payable to the order of Jno. O. Darby, county supervisor, which will be forfeited in case of failure of purchaser to comply with his bid. Said bonds will be delivered on January 31st, 1905. The right to reject any and all bids is reserved.

" 'Address all bids to John O. Darby, county supervisor, Chester, S. C., and endorse plainly on envelope the words, "Bid for County Bonds."

" 'For further information, if desired, apply to R. B. Caldwell, county attorney, Chester S. C.

" 'By order of the county board of commissioners.

" 'JOHN O. DARBY, County Supervisor.'

"5. The defendants, John G. White and Thomas H. White, as copartners under the firm name of White Brothers, acting in behalf of themselves and their co-defendant, the Winnsboro Bank, in response to the terms of the aforesaid advertisement, made a sealed bid for said bonds as follows:

" 'Mr. John O. Darby, supervisor Chester Co., Chester, S. C.

" 'Dear Sir: We bid one hundred and four dollars and twenty-six cents ($104.26) per hundred, for the entire issue of bonds you advertise, the validity of same, of course, subject to approval of a reputable attorney.

" 'Check for $1,000 is herewith enclosed, as terms of bid require.　Yours truly,　　　　WHITE BROTHERS.'

"6. Said sealed bid was accompanied by a certified check on the Winnsboro Bank, of Winnsboro, S. C., for one thousand dollars, payable to the order of John O. Darby, as county supervisor of said county of Chester; which check was signed by T. K. Elliott, president of the defendant, the Winnsboro Bank.

"7. On opening the sealed proposals made by sundry parties, on the 5th day of December, A. D. 1904, the aforesaid bid made by White Brothers was accepted by the board of county commissioners of Chester County.

"8. The aforesaid offer or sealed proposal made by White Brothers was based entirely upon faith of the validity of the exemption of said bonds from all State, county and municipal taxes, and if the aforesaid act of the General Assembly had not contained the provision, that 'said bonds shall be exempt from all State, county and municipal

taxes,' and if the advertisement calling for sealed proposals had not contained as a part of the proposed terms, that 'these bonds will be exempt from all State, county and municipal taxes,' the aforesaid bid would not have been made by these defendants.

"9. The provision of said act exempting said bonds from all State, county and municipal taxes benefits said county of Chester, in that it enables the said county board of commissioners of said county to sell said bonds at a higher premium and to float them at a lower rate of interest than they could do if said bonds were not so exempt from said taxes.

"10. None of the admissions herein contained are in any wise to affect either party, or to be regarded as made, except for the purpose of this submission of this controversy.

"11. The defendants contend and are advised, that the aforesaid act of the General Assembly of this State, in so far as it purports to enact that 'said bonds shall be exempt from all State, county and municipal taxes,' is in violation of the Constitution of this State, and, therefore, invalid; while the plaintiff contends that said provision of said act is not in violation of the Constitution, and is valid."

"The questions submitted to the Court upon this case are as follows:

"I. Is the provision in said act of the General Assembly, which provides that 'said bonds shall be exempt from all State, county and municipal taxes,' valid or invalid, under the Constitution of this State?

"II. Whether or not the said bonds will be exempt from all State, county and municipal taxes, as the property of these defendants, or either of them, as taxpayers in Chester County and in Fairfield County, or as the property of any taxpayer in this State who may be the legal owner thereof?

"If the Court shall hold and adjudge that the aforesaid provision of said act is invalid, and that said bonds cannot be

exempted from all State, county and municipal taxes, under the Constitution of this State, then judgment is to be rendered for the defendants, and it shall be adjudged that the aforesaid certified check for $1,000 be delivered up to the defendant, the Winnsboro Bank, and cancelled; but if the Court shall hold that the aforesaid provision of said act is valid, and that by said act the said bonds will be exempt from all State, county and municipal taxes, in any county of this State, then judgment is to be rendered for the plaintiff."

Signed by parties and their attorneys and sworn to.

The following is the Circuit decree:

"This is a submission under section 374, Code of Procedure.

"It involves the exemption from taxation of bonds of the plaintiff issued under the act of 18th February, 1904, 24 Stats., 608, and bid off by, but not yet delivered to, the defendants.

"If the bonds be exempt from taxation, judgment shall be for the plaintiff; if they be liable to taxation, then judgment shall be for the defendants, together with a return of a check for $1,000, heretofore deposited with the plaintiff by the defendants.

"The act declares, 'and said bonds shall be exempt from all State, county and municipal taxes.' If that provision be in violation of the Constitution of 1895, then it is of no force; and the issue is, does it violate that law? It may be that the issue is practically a moot one, for although the bonds might be subject to taxation in the defendants' hands, they would not be subject to taxation in this State, if in the hands of holders outside of the State. It is a matter of common history that generally the bond issue of the municipalities of the State are bought in bulk by persons and corporations residing in other States of the Union.

"But the issue is made here at the threshold, and before the bonds have sought the currents of the market. An

examination of the statutes enacted during the years 1902, 1903 and 1904 reveals the surprising fact that during those years the General Assembly authorized the issuance of bonds by counties, towns and school districts aggregating $702,500; and of that sum, $409,000 were exempted from taxation, and $258,500 were not so exempted. The exemptions were for twenty-one communities, and applied to Lee, Marion, Lancaster, Oconee, Newberry, Anderson, Kershaw, Chester, Horry, Georgetown, Chesterfield, Sumter, Laurens, Orangeburg and Darlington. The non-exemptions were for twenty communities, and applied to Union, Spartanburg, Greenville, Edgefield, Kershaw, Pickens, Anderson, Orangeburg, Bamberg, Greenwood, Saluda, Williamsburg, Darlington, Lancaster and Oconee. Wherefore, it is manifest the legislature did not discriminate between these communities on any good ground of public policy, such as might warrant a concession of the State's favor, upon a general rule, under which all like situated might come. The bonds issued to build a court house in Darlington were exempted from taxation, while those issued to erect a court house at Kershaw were not so exempted. The bonds authorized to construct a school house at Sumter were exempted from taxation, while those issued to build a like house at Anderson were not so exempted. Manifestly the exemption or non-exemption allowed by the statutes was altogether capricious.

"Such a system of taxation is prohibited by the Constitution. That instrument declares, 'the General Assembly shall * * * prescribe regulations to secure a just valuation for taxation of *all property* * * * except such as may be exempted by law for' (these purposes) ; and the purposes named are as follows, to wit: municipal, educational, literary, scientific, religious, charitable. See *Bank* v. *Darlington,* 50 S. C., 360; *Garrison* v. *Laurens,* 55 S. C., 554. Then, instead of leaving the General Assembly to amplify the exempted subjects, as did the Constitution of 1868, a

subsequent section of the same article proceeds itself to do that, and it names as 'exempted from taxation' the following 'property,' to wit: 'county, township, municipal, school, college, institutions of learning, asylum, public libraries, churches, parsonages and burying grounds.' Art. X., secs. 1 and 4, Const., 1895.

"The property in issue will be owned, if at all, by the purchaser; and will be taxable as 'an investment in bonds.' Code of Laws, sec. 260. It is true, the bonds will have been issued for a municipal purpose, but when so issued they become the property of the purchaser, and cannot be denominated municipal property, or property used for municipal purposes. A capitalist might lend to a municipality $20,000 to build a bridge, a court house, or a school house; and if he should accept as evidence of the debt a note of hand, instead of a coupon bond, the note would be subject to taxation, and yet the money evidenced by the note was used for a municipal purpose. The bridge, the court house and the school house would be exempt, because the Constitution exempts municipal property. And in the case at bar, if the county subscription of $75,000 had built the railway, and if the railway had been operated by the county for the public, then it would have been exempt from all taxation as municipal property. The phrase, 'municipal purposes,' used in section 1, in conjunction with property, means the same thing as 'municipal property,' used in the fourth section.

"These two sections declare what property shall be taxed and what property shall be exempt from taxation; the exception might have been omitted from the first section, or the fourth section might have been omitted altogether, and the same meaning accomplished as is compassed by the two sections.

"It was argued that State bonds are effectively exempt from taxation by act of the legislature, and, therefore. the legislature had equal power to exempt the bonds of one of the State's agencies. There seemed much force in that con-

tention.    But the exemption in the first instance is effective, because the *acceptance* of the exempted bonds by the purchaser creates a *contract* which precludes the State withdrawing the exemption.    Cooley on Taxation, page 204.

"The exemption, therefore, springs not from the act of the legislature, but from the contract between the State and the bondholders, one element of which was that the bonds should not be taxed.    Cooley Const. Lim., 281.

"And in the case at bar, if the defendants were owners of the bonds, and this were a proceeding by the State to collect taxes levied thereon, the issue might be a more serious one.

"The issue now, though, is different from that; it is, if these bonds shall be delivered to the defendants, shall they be thereafter exempt from taxation?    I am of the opinion that so much of the act as provides, 'said bonds shall be exempt from all State, county and municipal taxes,' is repugnant to the first and fourth sections of the tenth article of the Constitution of 1895.

"It is so ordered; and it is further ordered, that the certified check for $1,000, lodged with plaintiff by the defendants, be returned to them, and that their bid be cancelled."

The plaintiff appeals on the following grounds, to wit:

"(1) Because his Honor erred in holding 'that so much of the act as provides that "said bonds shall be exempt from all State, county and municipal taxes," is repugnant to the first and fourth sections of the tenth article of the Constitution of 1895.'

"(2) Because his Honor erred in holding that 'the phrase, "municipal purposes," used in section 1, in conjunction with property, means the same thing as "municipal property," used in the fourth section.'

"(3) Because his Honor erred in holding that 'the exception might have been omitted from the first section, or the fourth section might have been omitted altogether, and the same meaning accomplished as is compassed by the two sections.'

"(4) Because his Honor erred in applying the rule, '*expressio unius est exclusio alterius*,' in construing these two said sections of the Constitution.

"(5) Because his Honor erred in not holding that the exemption by the legislature of these bonds from taxation was an exemption for municipal purposes, and, therefore, not in violation of any section of the Constitution.

"(6) Because his Honor erred in not holding that the language of section 1, of article X., of the Constitution, in so far as it affects property of the character here in question, is permissory, and that the legislature in the exercise of its sound discretion has the power to exempt county bonds from all State, county and municipal taxes.

"(7) Because his Honor erred in not holding that a contract now exists between the State and the defendants, and that one element of said contract is that these bonds are, and will be, exempt from all State, county and municipal taxes; and that any attempt on the part of the State, or any of its agents, to tax said bonds, would be impairing the obligation of a contract, and, therefore, in violation of the Constitution of the United States.

"(8) Because his Honor erred in not holding that the State, having pledged itself in advance to the defendants, and any and all persons, firms or corporations who may hereafter possess said bonds, that said bonds shall be exempt from all State, county and municipal taxes, would be estopped from levying and collecting any tax whatsoever on said bonds.

"(9) Because his Honor erred in not holding that these county bonds are not rendered taxable by the general expression, 'all property, real, personal and possessory, etc.,' contained in section 1, of article X., of the Constitution.

"(10) Because his Honor erred in not holding that said bonds, as the property of these defendants, or either of them, are as the property of any taxpayer in this State who may be the legal owner and holder thereof, are and will be exempt from all State, county and municipal taxes."

*Mr. R. B. Caldwell,* for appellant, cites: Con., art. X., secs. 1, 4; 12 Ency., 2 ed., 373; 27 Ency., 2 ed., 639; Cool. on Tax., 2 ed., 175, 67, 204, 200, 4; Cool. on Con. Lim., 482; 17 Wall., 329; 20 Stat., 354; 27 Minn., 462; 7 Cranch, 164; 19 L. R. A., 77.

*Mr. A. S. Douglass,* contra, cites: Con., art. X., secs. 1, 4, 5; art. I., sec. 29; Code, 1902, 260; 53 S. C., 292; 50 S. C., 360; Cool. on Tax., 204, 205, 195; Endlich on Stats., secs. 163, 356, 533; 11 S. C., 333; 4 Wall., 550; 8 Wheat., 92; 1 How., 319; 16 Wall., 317; Cool. Con. Lim., 70.

February 14, 1905.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is a controversy without action, submitted under sec. 374, Code of Civil Procedure, upon an agreed statement of facts.   The General Assembly, by an act approved February 18th, 1904, 24 Stat., 607, authorized the county of Chester to issue coupon bonds, 4½ per cent. interest, to the amount of $75,000, for the purpose of refunding its bonded indebtedness, incurred under the act of 1874, 15 Stat., 668, in subscription to the capital stock of the Cheraw and Chester Railroad Company.   The act of 1904 contained the provision that "said bonds shall be exempt from all State, county and municipal taxes."   The county board of commissioners of Chester County were authorized to negotiate and sell said bonds for cash and for not less than par; and pursuant to an advertisement calling for bids, and calling attention to the fact that said bonds were exempt from taxation, the defendants, appellants, bid for the entire issue of said bonds at a premium of $4.26 on each $100 in amount, accompanying said bid with a deposit of $1,000, as required, and their bid has been accepted by the board of county commissioners of Chester County.   This bid would not have been made but for the provision as to exemption from taxation, and it is conceded that the provision

exempting the bonds from taxation enabled the county officers to sell the bonds at a higher premium and to float them at a lower rate of interest than could have been done without said provision.

The Circuit Court, Hon. George W. Gage, presiding, declared that the provision exempting the bonds from taxation was void, because in conflict with sections 1 and 4, art. X., of the Constitution, and thereupon annulled the contract between the plaintiff and defendants, and ordered a return to defendants of the $1,000 deposit. From this, plaintiff appeals. For a more detailed statement of the facts and issues, reference may be had to the agreed statement of facts, the decree of the Circuit Court and the exceptions thereto, which are to be reported herewith.

We are of the opinion that the decree of the Circuit Court is erroneous and must be reversed. The sections of the Constitution involved are as follows:

"Sec. 1. The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, the products of which alone shall be taxed; and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes: *Provided, however,* That the General Assembly may impose a capitation tax upon such domestic animals as from their nature and habits are destructive of other property: *And Provided, further,* That the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business."

"Sec. 4. There shall be exempted from taxation all county, township and municipal property used exclusively for public purposes and not for revenue, and the property of all schools, colleges and institutions of learning; all charitable institutions in the nature of asylums for the infirm, deaf

and dumb, blind, idiotic and indigent persons, except where the profits of such institutions are applied to private uses; all public libraries, churches, parsonages and burying grounds; but property of associations and societies, although connected with charitable objects, shall not be exempt from State, county or municipal taxation: *Provided,* That as to real estate, this exemption shall not extend beyond the buildings and premises actually ocupied by such schools, colleges, institutions of learning, asylums, libraries, churches, parsonages and burial grounds, although connected with charitable objects."

The fundamental error of the Circuit Court is in holding that the phrase, "municipal purposes," used in sec. 1, in conjunction with property, means the same thing as "municipal property," used in sec. 4, and that the exemption might have been omitted from sec. 1, or sec. 4 might have been omitted altogether, and the same meaning accomplished as is compassed by the two sections. This method of construction violates the rule which requires that the language of a Constitution should receive a natural and reasonable construction, and that different portions thereof should, if possible, receive a construction which would give some meaning to each of such provisions. The construction by the Circuit Court would strike from the Constitution the provision in sec. 1, "and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." The phrase, "as may be exempted by law," does not simply mean, "as may be exempted by sec. 4, art. X., of the Constitution," but clearly includes such exemption as the legislature may lawfully make for the purposes named. This provision of the Constitution implies that the legislature has the power to exempt property from taxation for municipal or other specified purposes, provided the exemption is not expressly or impliedly prohibited by other portions of the Constitution. It is a well established principle that the legislature has all the

power not denied it by the Constitution expressly or by necessary implication. Sec. 4, art. X., is mandatory and is self-executing, so that further legislation would not be necessary to exempt from taxation all property falling within the specified classes, and the legislature would have no power to tax what is therein exempt. But this section, in so far as it exempts property, is not a limitation on the power of the legislature to make further exemptions falling within the exceptions contained in sec. 1. Sec. 4 declares that the specified property *shall* be exempt, while sec. 1 permits legislative discretion in exempting other property not named in sec. 4, provided the exemption is for municipal purposes or other purposes named. The Constitution does not require that *all* property shall be taxed, but it only requires that all property, not exempt under the Constitution, and not exempt by a valid act of the legislature, shall be taxed. So that whenever the right of the legislature to exempt property from taxation is disputed, the question is, whether such exemption is expressly or impliedly forbidden by the Constitution. If the exemption falls within the classes named in sec. 4, we need go no further. If the exemption does not fall within sec. 4, then we may inquire if it falls within the legislative discretion to make exemptions implied in sec. 1. If the exemption does not fall directly within either of these sections, then the question might still remain, whether the sovereign power of the legislature is so far restricted by the Constitution as not to permit the exemption made—as, for example, wearing apparel, or a limited amount of provisions for the present subsistence of the family.

We limit our inquiry in this case to the question, whether the exemption would be sustained under sec. 1. There is a clear distinction between an exemption of property for municipal purposes, as permitted in sec. 1, and an exemption of municipal property used exclusively for public purposes, as granted in sec. 4. In the latter, the ownership must be in the municipality; in the former, it need not be. In the one,

the *use of the property* must be exclusively for a public purpose; in the other, the *exemption* must be for a municipal purpose.    If an individual owning a house in a town should permit its exclusive and free use by the public authorities for office rooms, or as a school room, or chain-gang quarters, or a pest-house, or any other public or municipal purpose, would it not be competent for the legislature, in view of such use, to exempt the owner from taxation thereon?    When the nature of the property exempted in this case and the circumstances are considered, the proposition is even clearer.

In so far as these bonds may be called property before delivery to the purchasers, they are municipal or county property for the exclusive use of the county, and would fall within the non-taxable class named in sec. 4.    A delivery of them for the purpose for which they were issued ought not to change them from non-taxable to taxable property, as a sale and delivery of them is the only method by which they can be used.    The bonds are to be converted into money for the exclusive use of the county for an admittedly public and corporate purpose.    They merely represent the taxes which the county must pay in the future during a series of years, thus relieving the county of the necessity to pay at once by an enormous single tax.    The bonds are but the substitute for the public burden discharged by the purchasers' money. If they do not become property until their issue and delivery according to the law which creates them, that same law affixes to them in their creation the quality or characteristic of being non-taxable.    To tax them would, as it were, tax the taxes they represent.

The fact that the legislature does not always exempt such bonds from taxation, does not seem to be of any importance. The parties in special charge of the bill may not have asked for it, or desired it, or may have doubted the legality of it, or the circumstances might suggest the advisability of exemption in one case and not in another.    But we have nothing to do with the reasons which influenced the legisla-

ture. .The fact, however, that the legislature does frequently, exempt such bonds from taxation is of some importance in showing the legislature's construction of the Constitution as authorizing the exemption. The policy of the legislature is expressed in sec. 266, Code, 1902, where, among other things, it exempts from taxation, "All bonds and stocks of the State. All municipal bonds in this State, which, by the terms of the act under which they are or may be *issued, are or may be exempted from. taxation."* The cases of *Garrison* v. *Laurence,* 55 S. C., 554, 33 S. E., 577, and *Bank* v. *Darlington,* 50 S. C., 337, 27 S. E., 846, do not aid us in this case, as they merely decide that there is no law authorizing the exemption of cotton mills from taxation by a simple resolution of a city council. We find nothing in the Constitution which forbids the exemption in question.

It must follow, that the bonds, when issued, would be nontaxable in the hands of any holder in this State.

The judgment of the Circuit Court is reversed.