19136

J. Philip MORGAN, Individually and Representing the Taxpayers of Berkeley County and of the State of South Carolina, Appellant, v. William A. WATTS, Auditor of Berkeley County, J. M. Williams, Treasurer of Berkeley County, the South Carolina Tax Commission, Central Electric Power Cooperative, Inc., The South Carolina Public Service Authority, and Daniel R. McLeod as Attorney General of the State of South Carolina, Respondents.

(178 S. E.(2d) 147)

*William L. Shipley, Esq.,* of Moncks Corner, *for Appellant,*

*Messrs. W. D. Simpson, Esq.,* and *Dennis, Dennis & Bishop,* of Moncks Corner, *Theodore B. Guerard, Esq.,* of *Sinkler, Gibbs, Simons & Guerard,* of Charleston, *Roberts, Jennings & Thomas, Asst. Attys. Gen., Joe L. Allen, Jr.,* and *G. Lewis Argoe, Jr.,* of Columbia, *for Respondents,*

December 11, 1970.

BRAILSFORD, Justice.

The exemption from *ad valorem* taxes formerly enjoyed by privately owned electric cooperatives in this State was removed by Act No. 432 of 1969 (56 Stat. 740). However, Section 18 of the Act provides that "all property leased to and operated by the South Carolina Public Service Authority for the generation or transmission of electric power shall, for all tax purposes, be considered the property of the Authority." Property of the Authority is exempt from such taxes by Section 59-8, Code of 1962, and the apparent intent of the legislature in adopting Section 18 was to insure that this exemption should extend to extensive electrical facilities in the possession of and operated by the Authority under four contracts with Central Electric Power Cooperative, Inc.

This property consists of electrical transmission or generation systems, which were constructed by Central over a period of some eighteen years, with funds borrowed from the United States Government through the Rural Electrification Administration, at a total cost of $47,579,000.00. In effect, Central was merely the eligible conduit through which these funds were made available for the expansion of the Authority's electrical system at favorable interest rates. In each instance, as stated in the order of the circuit court, "the rental payments to be made by the Authority are equal to

the amount of principal and interest becoming due on the applicable loan and, in each instance, the Authority may acquire title to the leased property upon the payment of the debt except in the case of the A-B System, which under the terms of that agreement automatically becomes the Authority's property when the indebtedness is paid. In the meantime, the Authority operates and maintains the leased property exclusively as a part of its electric power generation and transmission system. In fact, it was conceded at the hearing that it would be extremely difficult, if not impossible, to separate the leased properties from the rest of the Authority's system. * * *''

The plaintiff brought this taxpayer's action to challenge the constitutionality of Section 18 of the Act and the legality of the tax exemptions claimed thereunder. The circuit court resolved all issues in favor of the Authority and Central, and plaintiff has appealed. He charges that Section 18 of the Act is unconstitutional, basically, because it undertakes to exempt privately owned property from taxation.

This constitutional challenge is without merit under the fundamental principle that the power of taxation rests in the legislature, subject only to constitutionally imposed limitations. Plaintiff invokes Article X, Section 1 of the South Carolina Constitution, which requires "a uniform and equal rate of assessment and taxation, * * * of all property * * *." But this mandate expressly excepts "such property as may be exempted by law for municipal, * * * purposes * * *." The words "municipal purposes" in this section of the Constitution are used in the broad sense of a public or governmental purpose, as distinguished from a private purpose. *Ellerbe v. David,* 193 S. C. 332, 8 S. E. (2d) 518 (1940). We held in *Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481 (1935), that the generation and transmission of electric power by the Authority is a public and governmental function for the benefit of the people of South Carolina. Since

the property in question is an integral part of the system through which the Authority performs this public function, its exemption from taxation falls within the "municipal purposes" exception to the equality mandate relied upon by plaintiff. Cf. *Duke Power Co. v. Bell,* 156 S. C. 299, 152 S. E. 865 (1930); *Byrd v. Blue Ridge Rural Electrical Cooperative,* 215 F. (2d) 542 (4th Cir. 1954). Nor does the exemption of this property, as authorized by Article X, Section 1, conflict with Section 4 or 5 of the same article, as plaintiff contends. The self-executing provisions of Section 4 create certain exemptions, which admittedly do not include Central's property, but this section may not be construed as a limitation on the authority of the legislature to grant others. *Chester County v. White,* 70 S. C. 433, 50 S. E. 28 (1905). Section 5, which requires that all property within the limits of municipal corporations shall be taxed for corporate purposes, expressly excepts from this requirement property which the Constitution permits to be exempted. Therefore, neither section is applicable to the permitted, legislative exemption with which we deal.

Plaintiff further contends that Section 18 is a special law where a general law can be made applicable, contrary to Article III, Section 34 of the Constitution of South Carolina, and that it violates the due process and equal protection of the laws clauses of both Constitutions.

As already stated, Act No. 432 of 1969 revoked the tax exempt status of electrical cooperatives in this State. The legislature was aware of the considerable property in the possession and use of the Authority under contracts with Central. The 1969 Act did not affect the Authority's tax exempt status, which had existed since its creation in 1934, as to "any of the property acquired by it * * *." Sec. 59-8, Code of 1962. The clear purpose of Section 18 was to insure that property leased by the Authority and used by it as part of its electrical system should be treated for tax purposes as property acquired by it. This legislative

purpose was relevant only to a particular state agency, the Authority. Its accomplishment by legislation tailored to meet the peculiar needs of this agency is not within the evil of special and local legislation which the framers sought to remedy by Article III, Section 34. If Section 18 be regarded as a special law, which we need not decide, it is not on a subject as to which a general law can be made applicable. Hence, there is no violation of this constitutional limitation on legislative power.

The class of property designated by Section 18, *i. e.,* that leased to the Authority and used as part of its electrical system, is of the essence of the legislative purpose. The following quotation from the opinion in *Byrd v. Blue Ridge Rural Electrical Cooperative,* 215 F. (2d) 542 (4th Cir. 1954), which is fully supported by authority, is applicable and dispositive :

"The fundamental rule is that the State legislature has the right to make reasonable classifications of persons and property for taxation purposes. It is elementary that if the classification bears a reasonable relation to the legislative purpose sought to be effected, and if all the members of each class are treated alike under similar circumstances, the equal protection clauses of the Constitutions are fully complied with. *Duke Power Co. v. Bell, supra,* 156 S. C. at page 318, 152 S. E. 865." 215 F. (2d) at 547.

We find no merit in plaintiff's further claim that Section 18 does not apply to the A-B System, covered by the first contract between Central and the Authority, styled "Contract Obligation," nor to any property leased by the Authority after July 1, 1969, the effective date of the Act. If, as contended by plaintiff, the A-B System does not qualify for exemption under Section 18, because the "Contract Obligation" is an installment purchase contract rather than a lease, it surely qualifies for tax exemption under Section 59-8 of the Code as "property acquired" by the Authority. Since the property is tax exempt in either event, it would be pointless to inquire which statute creates the exemption.

As to property leased after the effective date of the Act, the argument is that "leased" and "operated" are in the past tense "with the obvious and customary meaning that property leased to the Public Service Authority" on the date of the enactment is the only property to be exempted. But these verbal adjectives also import futurity— "all property (having been or to be) leased to and operated by" the Authority is exempt. No sound reason for adopting the restrictive construction urged by plaintiff has been suggested, and we are satisfied that the more liberal construction, which we adopt, reflects the intention of the legislature.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.