## 19449

NEWBERRY MILLS, INC., and all other Taxpayers similarly situated, Appellants, v. J. Ray DAWKINS, Treasurer of Newberry County, and Thomas F. Buzhardt, City Finance Director and Treasurer of the City of Newberry, Respondents.

(190 S. E. (2d) 503)

8

*Eugene C. Griffith, Esq.,* of *Blease, Griffith, Stone &
Hightower,* Newberry, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr.,*
and *G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia,
and *R. Aubrey Harley,* and *T. William Hunter,* of New-
berry, *for Respondent,*

*Neville Holcombe, Esq.,* of *Holcombe, Bomar and Cure-ton,* of Spartanburg, *Amicus Curiae,*

July 6, 1972.

LITTLEJOHN, Justice:

This action was brought by the plaintiff, Newberry Mills, Inc. and "all other taxpayers similarly situated," against the Treasurer of Newberry County and against the City Finance Director and Treasurer of the City of Newberry. The complaint expressly alleges that the action is brought "pursuant to Section 65-2662 and Section 65-2663 of the Code of Laws for South Carolina for 1962 as amended." These sections of the Code permit a taxpayer to pay taxes under protest and thereafter contest the validity of the tax by bringing an action for recovery of the amount paid. The lower court denied the relief. Newberry Mills (hereinafter referred to as "plaintiff") appeals.

Throughout this opinion the term "valuation" shall refer to the determination of the true value of the property, while the term "assessment" shall refer to the determination of the tax value of the property.

Under our statutes manufacturers file their *ad valorem* property tax returns with the South Carolina Tax Commission for the purpose of determining value for tax assessment. Most other taxpayers file their returns with the auditors of the various counties. Code of Laws of South Carolina (1962) §§ 65-64 (17), 65-1502, 65-1644, 65-1647.1, 65-1752.

Plaintiff, a manufacturer, filed its return with the Commission for the 1970 tax year. In addition to the return, made on a form provided by the Commission, a copy of

plaintiff's financial balance sheet was required. Using the return and the balance sheet, the Property Tax Division of the Commission found the actual value of plaintiff's property (realty plus personalty) to be $4,804,700.50. A tax value of $507,805.50 was assessed. This figure represents 10%+ of the actual value of the personalty and realty; it is the figure to which the millage or local tax rate is applied in order to determine the actual tax liability.

At a hearing before the Commission plaintiff protested both the valuation and the assessment. Plaintiff contended (1) that the ratio (10%+) used by the Commission was greater than that used by local Newberry County authorities in assessing other property in the county; (2) that the Commission's method of valuation made the assessment void.

The plaintiff did not present evidence of "true value" to the Commission. The Commission overruled plaintiff's contentions and ruled that the figures indicated above should be ceritified to and used by the auditor of Newberry County in collecting taxes from plaintiff.

An appeal as permitted by Chapter 3 of Title 65 of the Code, was taken to the Tax Board of Review. The Board found that plaintiff's real property had been assessed by the Tax Commission at 10% of actual value, while other real property in Newberry county had been assessed at 5% of actual value. The Board ordered that plaintiff's real property be assessed at 5% and that plaintiff's personal property be assessed at 10%. This resulted in a tax value decrease from $507,805.50 to $445,170. The actual value was left at $4,804,700.50. The values as determined by the Tax Board of Review were subsequently entered upon the tax rolls of Newberry County, and taxes for the county and the city of Newberry were levied thereon.

Plaintiff paid the taxes under protest and brought this action for the recovery in the Court of Common Pleas of Newberry County. (Code Section 65-2661 *et seq.*) Plain-

tiff concedes that some taxes are due and asks that the matter be remanded to the Tax Commission for revaluation and reassessment.

The complaint attacks the constitutionality of the system whereunder plaintiff's property was taxed. It asks the court to "declare the assessment void in its entirety and issue its order for reassessment." It is based on the due process and equal protection clauses of the State and Federal Constitutions, as well as the following provisions of the Constitution of South Carolina:

"All property subject to taxation shall be taxed in proportion to its value." Art. X § 3A (formerly Art. I & 6).

"All taxes upon property, real and personal, shall be laid upon the actual value of the property taxed, as the same shall be ascertained by an assessment made for the purpose of laying such tax." Art. III, § 29.

"The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, . . . " Art. X § 1.

"The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same . . ." Art. X § 5(1).

The basic questions for the determination of this Court are as follows:

I. Can a different ratio of assessment for taxation be applied to real property than is applied to personal property?

II. Is the assessment made by the Tax Commission as amended by the Board of Review, void because of the method used to determine the valuation and resulting assessment?

As noted above, the Tax Board of Review affirmed the 10% rate set by the Commission on plaintiff's personal property, but ordered the rate on the plaintiff's real property reduced to 5%. These are the same rates generally used by the county authorities in assessing personal property and real property. The first question therefore deals with the difference in rates used by the Tax Commission. Is it constitutionally and statutorily permissible to assess plaintiff's personal property at 10% and real property at 5%?

Plaintiff argues that the use of different rates of assessment is impermissible in view of the constitutional provisions set forth above. Plaintiff also argues that this practice violates Section 65-64(17) of the Code, which directs that the Commission "shall assess and equalize all real and tangible property of manufacturers."

We find no constitutional or statutory provision that prohibits the assessment of real property at a different rate from personal property. All that is required is "a uniform and equal rate of assessment and taxation." This requirement has been interpreted as follows:

"Generally, within constitutional limitations, the state has power to classify persons or property for purposes of taxation, and the exercise of such power is not forbidden by the constitutional requirement that taxation be uniform and equal provided the tax is uniform on all members of the same class and provided the classification is reasonable and not arbitrary." 84 C. J. S. Taxation § 36 p. 112.

The trial judge, relying on *Morgan v. Watts*, 255 S. C. 212, 178 S. E. (2d) 147 (1970), held that "the provisions of Article 10, Section 1, do not prohibit the classification of property for tax purposes, therefore, the use of a higher ratio to determine the tax value for personal property than that applied to real property is not constitutionally precluded."

The order of the Tax Board of Review requires the Commission to use the same ratios for manufacturers' realty and

personalty as used by the local authorities for realty and personalty of other taxpayers. There is therefore equality and uniformity in the assessment as required by the constitutions and statutes.

The due process and equal protection clauses of the South Carolina and United States Constitutions do not require a different result. 16A C. J. S. Constitutional Law §§ 522, 650. It follows that the first question is without merit and must be decided adversely to plaintiff's contention.

The second question to be decided deals with the Commission's method af valuation, which plaintiff contends is constitutionally impermissible. Briefly stated, the Tax Commission uses the original cost of the property and carries that figure forward each year as the fair market value of the property. As items of equipment or taxable property are replaced, there is no change in the valuation of the property, the replacement factor being somewhat of an allowance for depreciation and obsolesence. The plaintiff asserts that this results in a patent failure to ascertain fair market value and that because of this the resulting assessment is void.

Such argument is not without appeal in view of the constitutional provisions set forth above, and in view of Code Section 65-1648, which requires all property to be valued "at its true value in money" for taxation. Nonetheless, plaintiff's exceptions cannot be sustained.

Code Section 65-2661 permits a taxpayer, if he conceives his tax levy by the state or by a county "to be unjust or illegal for any cause," to pay such taxes under protest. Having done so, he may bring an action under Section 65-2662 for the recovery of these taxes. Section 65-2663 makes this right and remedy applicable to municipalities.

This action is styled, "Newberry Mills, Inc., *and all other taxpayers similarly situated,*" etc., as though it were a class action. The complaint indicates that plaintiff seeks the return of taxes paid and/or declaratory relief. Regardless of the uncertain nature of the complaint, it

clearly states that the action is brought pursuant to Code Sections 65-2662 and 65-2663. It is therefore an action at law for the recovery of taxes paid. The lower court correctly held that it was not a class action.

Code Sections 65-105 and 65-2684 provide that an aggrieved taxpayer may apply to the Commission and to the Tax Board of Review for relief. As a rule, a party must exhaust all available administrative relief before seeking relief in the courts. *Warren v. Allstate Ins. Co.,* 249 S. C. 89, 152 S. E. (2d) 727 (1967). This rule applies to actions brought under Sections 65-2662 and 65-2663. *Meredith v. Elliott,* 247 S. C. 335, 147 S. E. (2d) 244 (1966).

Plaintiff's coveted relief hinges upon the allegation that the valuation of its property was invalid since it was not the constitutionally—and statutorily—required *actual* or *true* valuation. It was therefore incumbent upon plaintiff to prove to the administrative bodies below that the Property Tax Division's valuation of its property was not equivalent to the actual value or true value of the property. This plaintiff has failed to do. No evidence of the actual value of fair market value of plaintiff's property was presented to the Tax Commission. Plaintiff failed to establish that the "book value" method did not produce the proper valuation of its property.

Evidence pertaining to the value of plaintiff's property was offered at the hearing before the trial judge. Such valuation was based on a date 18 months later than the date involved. The evidence was objected to. The judge properly held the objection to be "meritorious because this court will not speculate to presume the findings of the Tax Commission or the Board had such facts or evidence been presented."

Of more importance than the method used in determining the valuation is the result reached. In the absence of proof to the Commission of some other "actual" value, the value set by the Commission must stand. This action in effect asked the lower court to review the ac-

tion of the Commission and the Tax Board of Review. In a sense it is an appeal. If a valuation is incorrect, then the actual value should be proven to that body charged by law with the duty of determining the value.

As we noted in *Wasson v. Mayes,* 252 S. C. 497, 167 S. E. (2d) 304 (1969), the task of checking the returns of thousands of merchants and manufacturers and arriving at the true value of their property in accordance with the applicable constitutional and statutory provisions is admittedly a most tedious and difficult one. Absolute accuracy with respect to valuation and complete equality and uniformity are not practically attainable. Apparently the method used by the Commission has proven generally satisfactory.

It is of interest that attorney Neville Holcombe of the Spartanburg Bar has filed a brief *amicus curiae* with this Court in support of plaintiff's position on the first question treated herein. Not all of the taxpayers on whose behalf he appears desired to attack the Commission's method of arriving at the value of their property because some of them thought that another method might bring about a higher valuation of their property. Accordingly, no position was taken in the *amicus curiae* brief on the second question.

The lower court correctly determined the issue and its judgment is

Affirmed.

Moss, C. J., and Lewis, J., concur.

Bussey and Brailsford, JJ., dissent in part.

Bussey, Justice (dissenting) :

I most respectfully dissent as to the disposition of the first stated question in the majority opinion. The answer to this question, which this Court has not heretofore needed to expressly decide, depends upon the meaning and intent of the several sections of our Constitution dealing with *ad valorem* property taxes. It is elementary law that in constructon of constitutional provisions words are presumed to be used

in their ordinary and peculiar meaning. It is further elementary that where the language of such is plain, clear and unambiguous, there is neither room nor need for construction. Applying these elementary rules to the constitutional provisions which here control, we must inevitably reach the conclusion that all property, real and personal, must be taxed alike within the jurisdiction in which the tax is imposed. It follows that the taxation of tangible personal property at twice the rate imposed upon real property in the same jurisdiction is a patent violation of the *ad valorem* property tax provisions of our Constitution.

It is not even asserted that there is anything unclear or ambiguous about these constitutional provisions, but even if there were any ambiguity and any need for construction, the authorities relied upon by the lower court and in the majority opinion are not in point and simply do not support the conclusion reached. The case of *Morgan v. Watts*, 255 S. C. 212, 178 S. E. (2d) 147 (1970), is cited and the lower court was swayed by a quotation in that case from *Byrd v. Blue Ridge Rural Electrical Cooperative*, 215 F. (2d) 542 (4th Cir. 1954), which opinion, in turn, cited and relied upon *Duke Power Co. v. Bell*, 156 S. C. 299, 152 S. E. 865. None of these decisions is at all in point on the instant issue. In each instance the court was concerned with property, exempted by law for "municipal * * * purposes", from the imposition of *ad valorem* taxes, pursuant to the literal language of Article X, Section 1 of the Constitution. An examination of these cases clearly shows that in speaking of the "classification of property for tax purposes" the Court was not considering whether the *ad valorem* property tax provisions of our Constitution permitted such classification but rather whether the exemptions permitted under such were in conflict with the equal protection clauses of the State and Federal Constitutions. It follows that neither Morgan nor its progenitors throw any light upon the present controversy.

Reliance is also had upon the language quoted from 84 C. J. S. Taxation § 36, p. 112. While at first glance such

language would appear to have some possible bearing upon the present issue, a sampling of the cases cited in support of the text, to my mind, completely destroys any persuasiveness that the text might otherwise have. Cited are cases such as *Carolina Music Co. v. Query,* 192 S. C. 308, 6 S. E. (2d) 473, dealing not with *ad valorem* property taxes, but license taxes instead.

The precise issue with which we are concerned is, however, specifically dealt with in 84 C. J. S. Taxation, § 26 p. 89, from which I quote:

"§ 26. Discrimination between Realty and Personalty.

"Under constitutional provisions requiring all property to be taxed by a uniform rule or that all property taxes shall be proportional and reasonable, it has been held that there can be no discrimination between real and personal property and that a tax levied on either class alone is invalid;"

An examination of the cases cited in support of the text of this section shows that without any exception whatsoever all states, wherein the constitutional language governing the imposition of *ad valorem* taxes on property is at all similar to the constitutional language of this State, have held that real and tangible personal property must be taxed alike and may not be treated differently. The States of North Carolina, Georgia, Massachusetts, Illinois, Michigan, Wisconsin, Nebraska and Colorado have so held. *Redmond v. Town of Tarboro,* 106 N. C. 122, 10 S. E. 845; *Wiley v. Salisbury,* 111 N. C. 397, 16 S. E. 542; *Pocomoke Guano v. Biddle,* 158 N. C. 212, 73 S. E. 996; *Jamison v. City of Charlotte,* 239 N. C. 682, 80 S. E. (2d) 904; *Colvard v. Ridley,* 218 Ga. 490, 128 S. E. (2d) 732; *Hutchins v. Howard,* 211 Ga. 830, 89 S. E. (2d) 183; *Georgia State B. & L. Assoc. v. Mayor, etc. of Savannah,* 109 Ga. 63, 35 S. E. 67; *In re* Opinion of Justices, 208 Mass. 616, 94 N. E. 1043 (1911); *People ex rel. Hamer v. Jones,* 39 Ill. (2d) 360, 235 N. E. (2d) 589 (1968); Appeal of General Motors Corp., 376 Mich. 373, 137 N. W. (2d) 161 (1965); *State ex rel.*

*Baker Mfg. Co. v. City of Evansville,* 261 Wis. 599, 53 N. W. (2d) 795 (1952) ; *Grainger Bros. v. County Board of Equalization,* 180 Neb. 571, 144 N. W. (2d) 161 (1966) ; *Ochs v. Town of Hot Sulphur Springs,* 158 Colo. 456, 407 P. (2d) 677 (1965).

It appears that in Ohio, New Jersey and Maryland real property and personal property may now be treated differently for the purpose of *ad valorem* taxes by virtue of constitutional amendments. Prior to the several constitutional amendments in these States, all of them like the other States hereinabove mentioned, held that then existing constitutional provisions quite similar to ours with respect to *ad valorem* property taxes precluded real and personal property being treated differently for tax purposes. *National Can Corp. v. State Tax Commission,* 220 Md. 418, 153 A (2d) 287; *Continental Can Co. v. Donahue,* 5 Ohio St. (2d) 224, 215 N. E. (2d) 400; *State ex rel. Struble v. Davis,* 132 Ohio St. 555, 9 N. E. (2d) 684; *Switz v. Kingsley,* 37 N. J. 566, 182 A. (2d) 841, 850.

In view of what I consider to be the patent, clear language of our several constitutional provisions, it is to me quite understandable that this Court has not heretofore been called upon to expressly decide the precise issue. There are, however, several cases, not directly in point, which throw at least some light upon the matter. See : *Gregg Dyeing Co. v. Query,* 166 S. C. 117, 164 S. E. 588, aff. 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831; *Thomas v. Town Council of Moultrieville,* 52 S. C. 181, 29 S. E. 647; *State v. Tucker,* 56 S. C. 516, 35 S. E. 215. In each of these cases the Court held that the particular statute involved imposed no *ad valorem* tax on property. The clear import or holding of each of those cases, however, was to the effect that had the particular statutes in fact imposed an *ad valorem* tax on property, such would have been unconstitutional under the *ad valorem* property tax provisions of our Constitution with which we are here concerned.

In brief summary, it is my view that the language of our Constitution is clear, unambiguous and compelling that real and tangible personal property have to be treated equally and alike for the purposes of *ad valorem* property taxes. And, if there were any need for construction, there is a complete absence of any authority whatsoever from this or any other jurisdiction to support the conclusion reached below and sustained by the majority opinion, all authority being to the contrary.

The foregoing is to my mind conclusive of the matter. But there is, to say the least, a most grave question as to whether the discrimination here involved is or is not in violation of the equal protection clauses of the Constitution. In my view of the matter, however, it is unnecessary to discuss or decide this quite serious and complex question. I would reverse the judgment of the lower court as to the issue hereinabove discussed.

BRAILSFORD, J., concurs.